IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH BAILEY, *et ux.*          :
                                :
        Plaintiffs,             :
                                :
        v.                      :    Case No: 1:08-cv-00644-RMC
                                :    Judge Rosemary M. Collyer
J & B TRUCKING SERVICES,        :
INC., *et al.*                  :
                                :
        Defendants.             :

## DEFENDANT J & B TRUCKING SERVICES INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' LIABILITY AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' LIABILITY

COMES NOW the Defendant, J&B Trucking Services, Inc., by counsel, Neil J. MacDonald, Esquire and the law firm of HARTEL, KANE, DeSANTIS, MacDONALD & HOWIE, LLP, moves this Honorable Court to deny Plaintiffs' Motion for Summary Judgment as to Defendants' Liability and pursuant to Fed. R. Civ. P. 56(b) and (e) grant Defendants' Cross-Motion for Summary Judgment as to Defendants' Liability, and dismiss this lawsuit against the named Defendants.

In their motion, Plaintiffs assert that the material facts of liability are not in dispute. However, Defendants generally dispute a vast majority of the "facts" cited by the Plaintiffs and further assert that many of the cited "facts" are irrelevant to the inquiry of Defendants' liability.



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

I.    **Facts regarding the liability of the named Defendants would only be material if they directly pertained to Mr. Sanabria's alleged conduct within the State of Maryland.**

This Court has stated that "a 'genuine issue' of fact is 'one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Simpkins v. United States*, 253 F. Supp. 2d 4, 6 (2003). (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In the instant matter the facts and allegations which are relevant to the issue of liability solely center around whether Mr. Sanabria's alleged conduct within the State of Maryland would give rise to liability for an alleged accident that occurred in the District of Columbia.  In order to establish liability, the Plaintiffs must prove that the conduct complained of by them not only occurred, but that it constituted negligence and was also the proximate cause of their injuries.  Therefore, in order to establish negligence, the Plaintiffs have the burden to prove that the Defendants had a duty, that the Defendants breached that duty, that the breach of that duty was the proximate cause of Plaintiffs' injuries, and then whether actual loss or damage resulted.  *See B.N. v. K.K.*, 312 Md. 135, 141 (1988)(*quoting* W.P. Keeton, PROSSER AND KEETON ON THE LAW OF TORTS, 164-165 (5th ed. 1984)); *see also Powell v. District of Columbia*, 634 A.2d 403, 406 (D.C. App. 1993).



HARTEL, KANE, DESANTIS, MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

**A.    Plaintiffs cite "facts" and documents which pertain to the element of damages and are therefore irrelevant to the issue of liability.**

Plaintiffs indicate that all of the "facts" cited in their motion for summary judgment are material to the issue of the named Defendants' liability. *See* Plain. Mot. ¶ 1.   However, Plaintiffs allege "facts" which pertain to the issue of damages and are therefore not material to the inquiry of liability.   *See* Plain. Mot. ¶¶ 3:E; 3:F; 3:G; 4:V.   *See also* Plain. Ex. C; D; E; M; N.   Defendants submit, therefore, that these "facts" should not be considered as they have no relevancy to the inquiry of the named Defendants' liability, as the establishment of liability is a condition precedent to the determination of damages.   Further, other than a deposition, limited in scope to Defendant Sanabria's alleged contacts with the District of Columbia, there has been no discovery in this matter. Defendants request the opportunity for formal discovery on the issue of damages, if Defendants' cross-motion for summary judgment is not granted.

**B.    Plaintiffs cite other "facts" and documents which do not pertain to the liability of the named Defendants.**

Plaintiffs' motion describes collateral events which occurred in the District of Columbia and in Maryland, which Plaintiffs assert are relevant to the determination of liability.   *See* Plain. Mot. ¶¶ 1:A; 2:B; 2:C; and 2:D (*citing* Ex. A at 2, 3; and Ex. N ¶ 3).   Generally, these "facts" have no



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

relevance as to whether Mr. Sanabria owed any duty to the Plaintiffs, whether Mr. Sanabria allegedly breached that duty by his conduct in Maryland, or whether the alleged breach was the proximate cause of the Plaintiffs' alleged injuries. It should be noted that as asserted by Plaintiffs, Mr. Sanabria's negligence arises from his alleged act of leaving a running vehicle unattended[1] in the State of Maryland and therefore any facts regarding the details of the alleged accident, the criminal trial of Mr. Cifuentes, injuries of the Plaintiff, or the conduct of the Plaintiff before the subject occurrence are irrelevant.

For example, the record does not support Plaintiffs' legal conclusion that the Plaintiff proceeded through the subject intersection in a "lawful manner." Additionally, this "fact" is irrelevant to the issue of Defendant's liability and seeks only to eliminate any defense of contributory negligence. Although the attached police report and Plaintiff's affidavit indicate that the Plaintiff proceeded through the subject intersection in accordance with a green light, the record does not address other factors which must be considered in order to come to the legal



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

---

1. *See* Compl. ¶¶ 6:25 "Defendants...breached their duty to Plaintiff Keith Bailey by: [a] Failing to turn off the engine of the vehicle; [b] Failing to remove the keys from the vehicle; [c] Failing to maintain custody and control of the vehicle during the period of time while the vehicle was warming up; [d] Failing to foresee that the truck could be stolen under the circumstances; [e] Failing to take the steps that a reasonably prudent person in the same or similar circumstances would have taken to secure the vehicle and protect against its theft; [and] [f] Failing to park the vehicle in a secure location...."

conclusion that the Plaintiff was operating the vehicle in a "lawful manner." (i.e. speed)   Therefore, Defendant submits that this "fact" is in genuine dispute.

Second, nothing in the record indicates that Mr. Sanabria, when he occasionally brought the subject box truck to his home and parked it on private property, did so to benefit his employer or to facilitate "his deliveries the following morning." *See* Plain. Mot. ¶¶ 3:K.  Plaintiffs cite Mr. Sanabria's deposition in support of this conclusion; however, Mr. Sanabria's deposition does not indicate that he brought the truck to his residence for the benefit of J&B Trucking, but for his own personal benefit. *See* Sanabria Depo. ¶¶ 29: 16-20 Ex. D.[2]

Third, the record is completely devoid of any facts supporting Plaintiffs' conclusion that Mr. Sanabria "parked the truck in a public area near his home." *See* Plain. Mot. ¶¶ 3:L. Plaintiffs again cite Mr. Sanabria's deposition in support of this conclusion; however, Mr. Sanabria's deposition does not indicate that the subject truck was parked in a public area near his home, but *at* his home, as described by Plaintiffs' counsel:

> Q:   Okay, Mr. Sanabria, you have the picture showing us *the Belford truck at your home.*



HARTEL, KANE, DeSANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

---

2.  "But it is where **I used to park the truck because I leave late from work and it was too tiring to go get the car** to the place where I used to park it so I would go home." (emphasis added)

Sanabria Depo. ¶¶ 29:13-15 (emphasis added).  Further, Mr. Sanabria and a third-party testify in their respective sworn affidavit that the subject truck was parked in the driveway of their residence on *private property.*  *See* Sanabria Aff. Ex. A; Rosa Aff. Ex. B.

Further, all facts pertaining to the investigation of the subject occurrence within the District of Columbia and subsequent criminal trial of Onorio Cifuentes-Lopez are irrelevant to the determination of whether liability attaches to Mr. Sanabria's conduct within the State of Maryland.  *See* Plain. Mot. ¶¶ 4:T; and 4:U (*citing* Ex. K at 2-3; Ex. L at 1,2).  In their motion, Plaintiffs assert that what the independent thief, Onorio Cifuentes-Lopez, was charged with and later plead to are material to the determination of Defendants' liability. However, pursuant to this Court in Simpkins, these "facts" cannot be material as they do not establish any element of the named Defendants' liability.  *See* Simpkins, 253 F. Supp. 2d at 5-6.



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

**C.   Pursuant to the court's holding in Simpkins, the following facts are material to the determination of Defendants' liability and are not in genuine dispute.**

Pursuant to Fed. R. Civ. Pro 56, the following citations to the supporting pleadings, deposition and affidavits are the relevant material facts regarding liability of the named Defendants which not genuinely disputable:

1.   A 2002 white Isuzu box truck was stolen from the

residence of Mr. Sanabria by Onorio Cifuentes-Lopez on the date of the alleged occurrence. (Compl. ¶¶ 4:13-16; Plain. Mot. ¶¶ 4: Q; Hytt. Police Report Ex. C; Sanabria Aff. Ex. A; Rosa Aff. Ex. B).

2.    At the time of the theft, Mr. Sanabria resided at 5615 Queens Chapel Road in Hyattsville, Maryland. (Sanabria Dep. 3:12-22, Ex. D; Sanabria Aff. Ex. A).

3.    At the time of the theft, the 2002 white Isuzu box truck was located in the driveway of Mr. Sanabria's residence, located on private property and within the State of Maryland. (Sanabria Aff. Ex. A; Rosa Aff. Ex. B; Compl. ¶¶ 4:13-16; Plain. Mot. ¶¶ 4:S; Hytt. Police Report Ex. C).

4.    At the time preceding the theft, Mr. Sanabria had left the keys to the subject truck within the truck's ignition.

5.    The 2002 white Isuzu box truck was operated by Onorio Cifuentes-Lopez without consent, expressed or implied. (Sanabria Aff. Ex. A; Hytt. Police Report Ex. C).

6.    The stolen, 2002 white Isuzu box truck was driven from the State of Maryland and was subsequently involved in an accident within the District of Columbia. (Compl. ¶¶ 4-5: 16-19).

The above referenced facts directly relate to whether Mr. Sanabria owned any duty to the Plaintiffs, whether Mr. Sanabria breach any potential duty to the plaintiffs, and whether any



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

-7-

breach of any potential duty was the proximate cause of the
Plaintiffs' alleged injuries.  Therefore, these facts are
relevant and material to the issue of the named Defendants'
liability.

### DISCUSSION

II.  **Plaintiffs' incomplete <u>Erie</u> analysis and misinterpretation
of District law lead Plaintiffs to arrive at the conclusion
that the substantive law of the District of Columbia
applies.**

In their motion for summary judgment, Plaintiffs
inadvertently omit a step in their analysis and interpretation
of the <u>Erie</u> doctrine.  *See* <u>Erie Railroad Co. v. Tompkins</u>, 304
U.S. 64 (1938).  Specifically, Plaintiffs assert that the since
the <u>Erie</u> doctrine holds that the substantive law of the forum
state applies to substantive matters when a federal court sits
in diversity, then "[t]he substantive law of the District of
Columbia therefore controls the liability of the Defendants in
this case."  Plain. Mot. ¶ 7.  In assuming that the <u>Erie</u>
doctrine meant that the substantive law of the District of
Columbia would automatically apply to the issue of liability,
Plaintiffs missed a critical step in their analysis.  The step
that was missed was in not applying the forum state's choice of
law provisions as those provisions are *substantive law*.  <u>See</u>
<u>Stancil v. Potomac Electric Power Co.</u>, 240 U.S. App. D.C. 237 n.
16 ("The forum's choice-of-law rules are substantive for *Erie*
purposes)(emphasis added); *See also* <u>Klaxon Co. V. Stentor Elec.</u>



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

Mfg. Co., 313 U.S. 487, 496 (1941); <u>Steorts v. American</u>
<u>Airlines, Inc.</u>, 207 U.S. App. D.C. 369, 372 (1981); <u>Young</u>
<u>Women's Christian Assoc. of the Nat. Capital Area, Inc. v.</u>
<u>Allstate Ins. Co. Of Canada</u>, 275 F.3d 1145, 1150 (D.C. App.
2002)("[T]he law of the forum state supplies the choice of law
standards.").[3]

A.   **Plaintiffs conclude that the substantive law of the
     District of Columbia applies to the named Defendants'
     liability through misinterpretation of District law.**

Plaintiffs correctly assert that the law of the District of
Columbia holds that "an owner or operator of a vehicle can be
held liable to a third party if a thief steals the vehicle while
the owner or operator leaves it negligently unattended, with the
keys in it, and the thief then injures the third party while
driving the stolen car." <u>See</u> Plain. Mot. ¶ 7 (<i>citing</i> <u>Gaither v.</u>
<u>Myers</u>, 131 U.S. App. D.C. 216, 222-32; <u>Ross v. Hartman</u>, 78 U.S.
App. D.C. 217, 218-19 (1943)).  However, it is important to note
the not so subtle factual distinction between the cases cited by
Plaintiffs and the facts of this case.  In both <u>Ross</u> and <u>Gaither</u>
the location of the negligent conduct and the subsequent theft
of the vehicle occurred within the District of Columbia, whereas
in the instant matter the alleged negligent conduct and the
subsequent theft of the vehicle both occurred within the State



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15ᵗʰ Street
Arlington, Virginia 22205

---

3.   <u>See</u> Defendant J&B Trucking Services, Inc.'s previously filed
motion for the application of Maryland substantive law for the
analysis as to why Maryland has the strongest governmental
interest in the application of its substantive law to the
liability of the named Defendants.

of Maryland. In light of this distinction, Plaintiffs still assert that the ruling of the <u>Gaither</u> court mandates the application of District substantive law in the instant matter, which misses the <u>Gaither</u> court's rationale behind their holding. *See* <u>Zhou v. Jennifer Mall Restaurant, Inc.</u>, 534 A.2d 1268, 1271 (D.C. App. 1987). The District of Columbia Court of Appeals clearly stated in a subsequent opinion that its decision in <u>Gaither</u> clearly meant that the substantive law of the District of Columbia would apply if:

> [A] cause of action is cognizable under District of Columbia tort law on the *basis of a violation within the District of Columbia of a District of Columbia statute or regulation*, even though the injury occurs nearby in Maryland....

<u>Id</u>. (*citing* <u>Gaither</u>, supra) (emphasis added). Therefore, the courts within the District of Columbia have been consistent in holding that it is the location of the negligence or statutory violation giving rise to the liability which is the determinative factor in determining which jurisdiction's substantive law applies, regardless of where the injury occurs.[4] *See* <u>Coleman</u>, 667 A.2d at 817-18; <u>Gaither</u>, 232 A.2d at 583; <u>Zhou</u>, 534 A.2d at 1271. Furthermore, the District of Columbia Court



HARTEL, KANE, DeSANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15ᵗʰ Street
Arlington, Virginia 22205

---

4. In Plaintiffs' motion, Plaintiffs admit that the Maryland statute applies to Mr. Sanabria's conduct in the State of Maryland. *See* ¶ 12, n. 5. However, Plaintiffs argue that D.C. case law, which applies and interprets a D.C. statute should apply and interpret this Maryland Statute. If this argument is followed, it would lead to liability for a violation of the applicable Maryland Statute under circumstances for which Maryland courts have clearly held that liability would not exist. *See* <u>Liberto v. Holfeldt</u>, 211 Md. 62, 66 (1959)

-10-

of Appeals has held that "Maryland has the primary obligations and duties with respect to public safety in Maryland and *the right to determine the circumstances under which liability shall attach for acts relating to public safety undertaken within its borders, particularly where [the] actors are its own residents.*" <u>D.C. v. Coleman</u>, 667 A.2d 811, 817-18 (D.C. App. 1995) (emphasis added). Assuming, for the purposes of the substantive law discussion, that all of the facts asserted by the Plaintiffs are true, the conduct that allegedly gives rise to Mr. Sanabria's negligence occurred within the State of Maryland by a Maryland resident. <u>See</u> Plain. Mot. ¶¶ 3-4: O, P, and Q; Compl. ¶¶ 2:3. Therefore, pursuant to the courts' holdings in <u>Coleman</u>, <u>Gaither</u>, and <u>Zhou</u> the District of Columbia would not have a strong governmental interest in the application of its substantive law for the same reason that the State of Maryland does have a strong governmental interest in the application of its substantive law; the alleged negligent conduct occurred within the State of Maryland by a Maryland resident. However, it turns out that the discussion regarding which jurisdiction's substantive law applies to the facts of this case is purely academic as each jurisdiction's substantive law would find that the Defendants are not liable as a matter of law, albeit for different reasons.



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

**II.  Plaintiffs' motion for summary judgment should be denied and Defendants' cross-motion for summary judgment should be granted as Defendants would not be found liable as a matter of law, regardless of which jurisdiction's substantive law applies.**

**A.  Standard for summary judgment.**

This Court has stated that "[i]n assessing a summary judgment motion, the Supreme Court has explained that a trial court must look to the substantive law of the claims at issue to determine whether a fact is 'material.'"[5] Simpkins v. U.S.A, et al., 253 F. Supp. 2d 4, 5-6 (2003)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  This Court has also stated that "[u]nder Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Council for Responsible Nutrition, et al. v. Hartford Cas. Ins. Co., 2007 U.S. Dist. LEXIS 49963 (2007) (citing Fed. R. Civ. Pro. 56(c)). In defining the function of the trial court in determining whether summary judgment is appropriate, the Supreme Court of the United States has held that "at the summary judgment stage the judge's function is not himself to weigh the evidence and



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

---

5.  For the purposes of Defendants' cross-motion for summary judgment, the "claims at issue" would be Defendants' potential liability.

-12-

determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (U.S. 1986). Furthermore, in opposing a motion for summary judgment, "the nonmoving party may not rely solely on allegations or conclusory statements," but must present specific facts showing a genuine issue. <u>Responsible Nutrition</u>, 2007 U.S. Dist. LEXIS at 7 (<i>citing</i> <u>Greene v. Dalton</u>, 164 F.2d 671, 675 (D.C. Cir. 1999)) <u>See</u> <u><i>also</i></u> Fed. R. Civ. Pro. 56(e)(2).

> **B. Plaintiffs' motion for summary judgment should be properly denied and Defendants' cross-motion for summary judgment properly granted if the substantive law of the State of Maryland is applied.[6]**

Under the substantive law of Maryland, in order to establish negligence, the Plaintiffs have the burden to prove that "[1] A duty, or obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks. [2] A failure on the person's part to conform to the standard required: a breach of the duty....[3] A reasonably close causal connection between the conduct and the resulting injury....[and][4] Actual loss or damage resulting to the interests of another...." <u>B.N. v. K.K.</u>, 312 Md. 135, 141



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

---

6. <u>See</u> Defendant J&B Trucking Services, Inc.'s previously filed motion for the application of Maryland substantive law for analysis as to why Maryland as the strongest government interest in the application of its substantive law.

-13-

(1988)(*quoting* W.P. Keeton, PROSSER AND KEETON ON THE LAW OF TORTS, 164-165 (5th ed. 1984)).   In the instant matter the alleged duty would arise under Md. Transportation Code Ann. § 21-1101, which states that "a person driving or otherwise in charge of a motor vehicle may not leave it unattended until the engine is stopped, the ignition locked, the key removed, and the brake effectively set."   The Maryland Court of Appeals has defined this statutory duty to primarily "protect against theft of or tampering with a motor vehicle and to prevent them from moving under their own momentum should the brakes fail." Liberto v. Holfeldt, 211 Md. 62, 66 (1959).   However, the duty created by this statute does not extend to all persons as the Maryland Court of Appeals has held that "[s]uch a duty, in all reasonableness, cannot be said to extend to all the world, but must be a foreseeable duty...." Id.   Further, even if an individual is deemed to be negligent under the statute, that negligence is not the proximate cause of the injury if there is an intervening cause.   Id.   Therefore, it is "incumbent on the Plaintiff, in order to recover damages from the defendant, to show not only a duty owed to the plaintiff and a breach thereof, but also to establish that the breach of that duty had not been interrupted by a break in the chain of causation."[7]   Id. (*citing* Bowman v. Williams, 164 Md. 397 (1933)).



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15ᵗʰ Street
Arlington, Virginia 22205

---

7.  Holding that "the negligence of the thief was an independent intervening cause which was in fact the proximate cause of the accident." Id. (*citing* Austin v. Buettner, 211 Md. 61 (1956)).

-14-

**1.  The facts of the instant matter fail to establish a foreseeable duty or, in the alternative, even if a duty existed, its breach was not the proximate cause of Plaintiffs' injuries as a matter of law.**

Assuming, *arguendo*, that all of the "facts" referenced by Plaintiffs in their motion and in their Complaint are taken to be true, Plaintiffs fail to assert a cause of action against the Defendants as a matter of law.  First, Plaintiffs allege that the subject vehicle was involved in the subject occurrence within the District, after it was stolen in Prince George's County, Maryland.  *See* Compl. ¶¶ 4:13-16; Plain. Mot. ¶¶ 4:Q-S; Plain. Ex G; Plain. Ex. I.  Specifically, Plaintiffs allege that a box truck was stolen from Sergio Rolando Sanabria's private residence by Onorio T. Cifuentes.  <u>Id</u>.  ("5615 Queens Chapel Road, Hyattsville, *the location from where Mr. Cifuentes-Lopez stole the white Isuzu box truck.*" Plain. Mot. ¶¶ 4:S; Sanabria Aff. Ex. A; Rosa Aff. Ex. B).  Plaintiffs then allege that Mr. Cifuentes, the independent actor, then drove the stolen box truck from the State of Maryland into the District of Columbia where he caused the alleged injury.  *See* Compl. ¶¶ 4-5:16-19; Plain. Mot. ¶¶ 2: C-D and 4:Q-R; Plain. Ex. G and I.  Plaintiffs assert that the liability of the named Defendants is, therefore based upon the alleged conduct of Mr. Sanabria, which occurred in the State of Maryland.  *See* Compl. ¶¶ 4:13-14; Plain. Mot. ¶¶ 3-4:M, O, P, and Q.



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

First, the Plaintiffs fail to establish that Mr. Sanabria owed the them any duty. In defining what the foreseeable risk is in leaving a running vehicle unattended, the Maryland Court of Appeals has held that "'[t]he risk reasonably to be perceived,' does not encompass every conceivable possibility and danger." The Hartford Ins. Co. v. Manor Inn of Bethesda, Inc., et al., 335 Md. 135, 151 (1994) (quoting Palsgraf v. Long Island R. Co., 162 N.E. 99, 100 (1928)). In applying the above principle to similar facts, Maryland courts have held that it is "reasonably foreseeable that, by leaving the keys in the ignition, a thief would take the [truck]." Hartford Ins. Co., 335 Md. at 160. (quoting Bloom v. Good Humor Ice Cream Company, 179 Md. 384, 387 (1941)). However, the Maryland Court of Appeals has held that it is not foreseeable "that the thief would drive negligently, and even more unclear that, in doing so, he or she would injure the plaintiff." Id. Therefore, pursuant to the Liberto and Hartford courts' holdings, the Plaintiffs fail to establish that Mr. Sanabria owed the Plaintiffs a duty, as the negligent and criminal acts of the independent thief, within the District of Columbia, were not foreseeable by Mr. Sanabria, as a matter of law. See Liberto, 211 Md. at 66; Hartford Ins. Co., 335 Md. at 160.

Additionally, under Maryland substantive law, the Plaintiffs must establish that the alleged act of Mr. Sanabria "in leaving the [truck] unattended with the keys in the ignition



HARTEL, KANE, DeSANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

was a proximate cause of the accident." Hartford Ins. Co., 335
Md. at 154. Even assuming, that Mr. Sanabria did violate Md.
Transportation Code Ann. § 21-1101 and its violation is evidence
of negligence, the Maryland Court of Appeals has held that this
"negligence 'is not per se enough to make a violator thereof
liable for damages.'" Id. (quoting Liberto, 221 Md. at 65).
Therefore, the Maryland Court of Appeals reasoned that in order
to establish liability, the plaintiff must not only establish
that the violation of the statue was the proximate cause of the
injury, but "'that [it] had not been interrupted by a break in
the chain of causation.'" Id. (internal citations omitted).

Assuming, arguendo, that the facts as alleged by the
Plaintiffs are true, Mr Sanabria was negligent in leaving the
subject box truck unattended, with the keys in the ignition and
the engine running. See Compl. ¶¶ 4: 13-14. Further, we will
assume as true Plaintiffs allegation that an independent third
party, Mr. Cifuentes, stole the subject truck and directly
caused Plaintiffs' alleged injuries. See Compl. ¶¶ 4: 13-16 and
4-5: 16-19. The Maryland Court of Appeals evaluating liability
and proximate cause in cases with similar facts, has
consistently held that:

> [The proximate cause] must be the natural and probable
> consequence of the negligent act, unbroken by any
> intervening agency, and where the negligence of any one
> person is merely passive, and potential, while the
> negligence of another is the moving and effective cause of
> the injury, *the latter is the proximate cause and fixes
> the liability*.



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

-17-

Hartford Ins. Co., 335 Md. at 160. (*quoting* <u>Bloom v. Good Humor</u> <u>Ice Cream Company</u>, 179 Md. 384, 387 (1941))(emphasis added).  If we assume, as true, the facts as alleged by the Plaintiffs with respect to the alleged conduct of Mr. Sanabria within the State of Maryland, that conduct would have been the proximate cause of *the theft of the van*, but not the proximate cause of the Plaintiffs' alleged injuries as the causal chain was broken by the theft of the van by an independent third-party.  <u>Id</u>.  <u>See</u> <u>also</u> <u>Holfeldt</u>, 221 Md. at 67.  Therefore, under the substantive law of the State of Maryland, where the alleged passive negligence of the Mr. Sanabria occurred, Plaintiffs' motion for summary judgment on liability should properly be denied and Defendants' cross-motion for summary judgment granted, as Mr. Sanabria did not have a foreseeable duty to the Plaintiff and since alleged passive negligence of Mr. Sanabria was not the proximate cause of the Plaintiffs' alleged injuries as a matter of law.

   **C.   Plaintiffs' motion for summary judgment should be**
       **properly denied and Defendants' cross-motion for**
       **summary judgment properly granted if the substantive**
       **law of the District of Columbia is applied.**

   The District of Columbia Court of Appeals has held that to establish negligence, the Plaintiff has the burden to establish "(1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the Defendant, and (3) damage to the plaintiff, proximately caused by the breach of duty."  <u>Powell v.</u>



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

<u>District of Columbia</u>, 634 A.2d 403, 406 (D.C. App. 1993)(*citing*

<u>District of Columbia v. Cooper</u>, 483 A.2d 317, 321 (D.C. 1984)).

Within the District of Columbia, there is a statutory duty not

to permit a vehicle "to stand unattended without first stopping

the engine, locking the ignition, removing the key, and

effectively setting the brake."  <u>See</u> CDCR § 18-2418.1.  However,

the courts of the District of Columbia have held that whether or

not this duty applies depends upon the location of the vehicle

at the time it is left unattended.  <u>See</u> <u>Elliott v. Capitol</u>

<u>Cadillac-Oldsmobile Company</u>, 245 A.2d 634, 635 (D.C. App.

1968).[8]  Typically, the traditional rules of statutory

construction would indicate that "where the language of a motor

vehicle regulation does not specifically restrict its

applicability to public streets and highways, it can be extended

to both public and private property."  <u>Id</u>.  However, the

District of Columbia Court of Appeals specifically carved out an

exception to this rule with respect to the language of the

"unattended vehicle" statute when it held that "this rule of

construction should not be extended to limit the use of private

premises by a property owner and apply to his automobile, or

that of a guest, when parked on that property."  <u>Id</u>. (<u>See</u> <u>also</u> n.



HARTEL, KANE, DeSANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

---

8.  This case was decided under Art. XIV, § 98, which utilized the
same language as the current regulation.  ("No person driving, or
in charge of a motor vehicle shall permit it to stand unattended
without first stopping the engine, locking the ignition, removing
the key, and effectively setting the brake thereon and, when
standing upon any grade, turning the front wheels to the curb or
side of the highway.")

2 "Even if the interpretation could be extended to cover private property, full compliance...would place an unreasonable burden upon car owners."). Therefore, the District of Columbia Court of Appeals held that the duty prescribed by statute only applied to vehicles "left unattended on *public* property." Id. (emphasis added).

The District of Columbia Court of Appeals rationale was that its decision in <u>Gaither</u> held that legislative intent of this statute was "to thwart the nefarious activities of any person tempted to steal [a car] because of the easy accessibility of the key.'" Id. (*citing* <u>Gaither</u>, 232 A.2d at 582.). The <u>Elliott</u> court further held that "[w]hen a car is made less accessible to possible removal by thieves because placed on *private property* and away from immediate public contact and visibility, the regulation, which lists a number of operations to be performed when leaving a car unattended, *does not apply*." Id. (emphasis added).

The facts indicate that the subject truck, before it was stolen and allegedly involved in the subject occurrence, was parked within a residential driveway on private property. <u>See</u> Sanabria Aff. Ex. A; Rosa Aff. Ex. B; Compl. ¶¶ 4:13-16; Plain. Mot. ¶¶ 4:S; Hytt. Police Report Ex. C. In applying the <u>Elliott</u> standard to the facts of instant matter the "regulation, which lists a number of operations to be performed when leaving a car unattended...," and which Plaintiffs cite as Mr. Sanabria's



HARTEL, KANE, DESANTIS,
MacDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

alleged negligence, would not apply as the subject box truck was located in a residential driveway, on private property, at the time it was stolen by Mr. Cifuentes. *See* Sanabria Aff. Ex. A; Rosa Aff. Ex. B.  Further, the subject truck was made less accessible to the public, while on private property, as demonstrated by the Toyota Camry, which was parked within the same driveway and was struck by the subject truck after it was stolen. *See* Rosa Aff. Ex. B.

Therefore, even if this Honorable Court were to apply the substantive law of the District of Columbia, Plaintiffs' motion for summary judgment should still be denied and Defendants' cross-motion should be granted as the subject box truck was parked in a residential driveway, on private property and therefore, Mr. Sanabria had no duty to the Plaintiffs as a matter of law.

## III. Conclusion

For the foregoing reasons, the Defendants respectfully request this Honorable Court to deny Plaintiffs' Motion for Summary Judgment as to Defendants' Liability and to enter summary judgment in favor the Defendants on the issue of liability and to dismiss this lawsuit against them.



HARTEL, KANE, DeSANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

Respectfully Submitted,

J & B TRUCKING SERVICE, INC.
By Counsel:

HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP

_____/s/_____
Neil J. MacDonald, #433699
11720 Beltsville Drive
Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this ___8th___ day of August, 2008,

a copy of the foregoing was mailed, post-prepaid, to:

Steven VanGrack, Esquire
Edward L. Norwind, Esquire
Murray D. Scheel, Esquire
KARP, FROSH, LAPIDUS,
WIGODSKY & NORWIND, P.A.
2273 Research Boulevard
Suite 200
Rockville, Maryland  20850



HARTEL, KANE, DESANTIS,
MACDONALD & HOWIE, LLP
Calverton Office Park
11720 Beltsville Ddrive, Suite 500
Beltsville, Maryland 20705
Telephone: (301) 486-1200
Facsimile: (301) 486-0935

5924 North 15th Street
Arlington, Virginia 22205

_____/s/_____
Neil J. MacDonald, Esq.

E:\NJM\Bailey v. J & B Trucking et al\Response.Cross.Motion.7.23.08.wpd

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

KEITH BAILEY, *et ux.*     :
                    :

       Plaintiffs,   :

       v.           :   Case:  1:08-cv-00644
                    :   Assigned To:  Collyer, Rosemary M.
J & B TRUCKING SERVICES, :
INC., *et al.*          :

       Defendants.   :

#### AFFIDAVIT OF SERGIO ROLANDO SANABRIA

1.   I, Sergio Rolando Sanabria, am over the age of twenty-one and am competent to testify.

2.   I am a named Defendant in this action.

3.   I have filed a motion to dismiss based on a lack of personal jurisdiction.

4.   I file this affidavit by special appearance only.

5.   On January 7, 2006, a 2002 white Isuzu box truck was stolen from the driveway of my residence located at 5615 Queens Chapel Road, Hyattsville, Maryland.

6.   This vehicle was parked within a driveway on private property at the time it was stolen by the independent third party, Onorio Cifuentes-Lopez.

7.   Onorio Cifuentes-Lopez did not have permission, expressed or implied, to operate the Isuzu box truck.



I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing Affidavit are true.


_____          $B-06-08$
Sergio Rolando Sanabria                    Date

State of _Maryland_
County of _Prince George's_
I hereby certify that on the _6th_ day of _August_, 2008, before me, the subscriber, a notary public of the State of Maryland, personally appeared the affiant Sergio Rolando Sanabria and made oath or affirmation in due form of law that the matters and facts set forth in the forgoing Affidavit are true.

As witness my hand and notarial seal.


                                   _Martha W. Harrison_
                                   Name:

My Commission Expires:

**MARTHA W. HARRISON**
Notary Public, State of Maryland
Commission Expires Oct. 1, 2008

E:\NJM\Bailey v. J & B Trucking et al\SMJ.Aff.7.28.09.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH BAILEY, *et ux.*          :
                                :
                                :
        Plaintiffs,             :
                                :
        v.                      :    Case:  1:08-cv-00644
                                :    Assigned To:  Collyer, Rosemary M.
J & B TRUCKING SERVICES,        :
INC., *et al*.                  :
                                :
        Defendants.             :

### AFFIDAVIT OF ROSA H. LOPEZ

    1.    I, Rosa H. Lopez, am over the age of twenty-one and am competent to testify.

    2.    I currently reside at 5615 Queens Chapel Road, Hyattsville, Maryland.

    3.    On January 7, 2006, a 2002 white Isuzu box truck was stolen from the driveway of my residence located at 5615 Queens Chapel Road, Hyattsville, Maryland.

    4.    This vehicle was parked within a driveway on private property at the time it was stolen by the independent third party, Onorio Cifuentes-Lopez.

    5.    My Toyota Camry was also parked in the driveway of my residence, also on private property at the time the subject truck was stolen.

    6.    My Toyota Camry was damaged, on private property, when thief, Onorio CIfuentes-Lopez, while driving away, hit my car.

EXHIBIT

*B*

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing Affidavit are true.

_____
Rosa H. Lopez

8/6/08
Date

State of *Maryland*

County of *Prince George's*

I hereby certify that on the 6th day of *August*, 2008, before me, the subscriber, a notary public of the State of Maryland, personally appeared the affiant Rosa H. Lopez and made oath or affirmation in due form of law that the matters and facts set forth in the forgoing Affidavit are true.

As witness my hand and notarial seal.

*Martha W. Harrison*
Name:

My Commission Expires:

**MARTHA W. HARRISON**
Notary Public, State of Maryland
Commission Expires Oct. 1, 2008

E:\NJM\Bailey v. J & B Trucking et al\SMJ.Aff.7.28.09.wpd

| COPY TO | OTHER REPORTS: | | | | | |
|---|---|---|---|---|---|---|

06-0069

**Hyattsville City Police**

**INCIDENT REPORT**

CRIME ANALYSIS

OTHER REPORTS:
- ARREST
- ACCIDENT
- CONTINUATION — J-2
- PROPERTY — OTHER
- SPECIAL

Reviewed by

☐ CRS
☐ CID

Incident Number **00324**

TYPE OF INCIDENT **STOLEN AUTO**

DATE/TIME OCCURRED **1-7-06**  04450500

LOCATION OF INCIDENT
**5615 QUEENS CHAPEL RD, HYATTSVILLE, MD**

DATE/TIME REPORTED **1-7-06**  0510

SUMMARY OF INCIDENT
UNKNOWN SUSPECT STOLE BOX TRUCK

| PERSONS | V-VICTIM  W-WITNESS | R-REPORTING PERSON  P-HYATTSVILLE CITY POLICE | T-T/A | | |
|---|---|---|---|---|---|

| CODE | NAME: LAST | FIRST | MIDDLE | RACE | SEX | DOB | H | N | |
|---|---|---|---|---|---|---|---|---|---|
| V | LAINEZ | JOSE | | H | M | 10-16-71 | ☒ | ☐ | 1 |

| S/A LOI ☐ | ADDRESS 8622 WATERSHED CT, GAITHERSBURG, MD 20877 | CITY | STATE | ZIP | HOME TELEPHONE 240-793-4701 | 129 |
|---|---|---|---|---|---|---|

PLACE OF EMPLOYMENT // SCHOOL / OR OTHER INFORMATION — OTHER TELEPHONE — 2

| CODE | NAME: LAST | FIRST | MIDDLE | RACE | SEX | DOB | H | N | 009 |
|---|---|---|---|---|---|---|---|---|---|
| R | SANABRIA | SERGIO | | H | M | 1-23-77 | ☒ | ☐ | 3 |

| S/A LOI ☒ | ADDRESS | CITY | STATE | ZIP | HOME TELEPHONE 240-982-0077 | 000 |
|---|---|---|---|---|---|---|

| CODE | NAME: LAST | FIRST | MIDDLE | RACE | SEX | DOB | H | N | 4 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | ☐ | ☐ | 000 |

| S/A LOI ☐ | ADDRESS | CITY | STATE | ZIP | HOME TELEPHONE | 5 |
|---|---|---|---|---|---|---|

A-ARRESTED  S-SUSPECT  F-FIELD OBSERVATION    MORE NAMES IN DETAILS?  YES ☐  NO ☒    000

| CODE | NAME: LAST | FIRST | MIDDLE | RACE | SEX | DOB | H | N | 6 |
|---|---|---|---|---|---|---|---|---|---|
| S | UNKNOWN | | | | | | ☐ | ☐ | 000 |

| S/A LOI ☐ | ADDRESS | CITY | STATE | ZIP | TELEPHONE | 7 |
|---|---|---|---|---|---|---|

HGT  WGT  EYES  HAIR  OTHER DESCRIPTION, PHYSICAL APPEARANCE / DESCRIPTION OF WEAPON    000

| CODE | NAME: LAST | FIRST | MIDDLE | RACE | SEX | DOB | H | N | 8 |
|---|---|---|---|---|---|---|---|---|---|
| X | | | | | | | ☐ | ☐ | 000 |

| S/A LOI ☐ | ADDRESS | CITY | STATE | ZIP | TELEPHONE | 9 |
|---|---|---|---|---|---|---|

HGT  WGT  EYES  HAIR  OTHER DESCRIPTION, PHYSICAL APPEARANCE / DESCRIPTION OF WEAPON    000

TOTAL

| VEHICLE | S-STOLEN  R-RECOVERED | A-VEHICLE AUDIT  I-IMPOUND | O-OTHER  U-UNAUTHORIZED USE | W-WANTED | RACE | SEX | DOB | H | N |
|---|---|---|---|---|---|---|---|---|---|

CLERK

| OWNER | NAME: LAST | FIRST | MIDDLE | | | | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|

| S/A V? ☒ | ADDRESS | CITY | STATE | ZIP | TELEPHONE |
|---|---|---|---|---|---|

OWNER NOTIFIED?  YES ☐  NO ☐    DATE / TIME    INSURANCE COMPANY

| CODE | YR. MAN. | MAKE AND MODEL | STYLE | COLOR | LICENSE PLATE NUMBER | STATE | MONTH / YEAR |
|---|---|---|---|---|---|---|---|
| S | 02 | ISUZU | BX TK | WHIT/RED | 83L092 | MD | 9/06 |

VIN  JALF5C13727700502    REMARKS

MILEAGE — KEYS IN IGNITION? YES ☐ NO ☐ — MAY VEHICLE BE RELEASED? IF NOT, WHY? YES ☐ NO ☐ — IMPOUND NUMBER / ID NO.

VALUE — IF RECOVERED, JURISDICTION STOLEN FROM — CITY / COUNTY — STATE

**EXHIBIT C**

TOWED BY — LOCATION TOWED TO

CASE STATUS

TELECOMMUNICATIONS NOTIFIED? YES ☐ NO ☐ ID ☐    ELECTRONIC MAIL OR TELEPHONE?    DATE/T

REPORTING OFFICER  PFC S BACHERT   194

| sector B | Ward 5 | APPROVAL  L.T.S. |
|---|---|---|

L-103

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


KEITH BAILEY, et al.          :

                              :

              Plaintiffs :

                              :

      vs.                     : Civil Action No.

                              : 1:08-cv-00644-RMC

J&B Trucking Service, Inc.,: Judge R. Collyer

et al.                        :

                              :

              Defendants :


                    Beltsville, Maryland

                    Tuesday, May 27, 2008


Deposition of:


          SERGIO R. SANABRIA

called for oral examination by counsel for

Plaintiffs, pursuant to notice, at the offices

of Hartel, Kane, DeSantis, MacDonald, & Howie,

LLP, 11720 Beltsville Drive, Suite 500,

Beltsville, Maryland 20705, before Renee A.

Feder, CSR, a Notary Public in and for the

State of Maryland, beginning at 1:08 p.m.,

when were present on behalf of the respective

parties:

EXHIBIT

D

Page 2

```
1   On behalf of the Plaintiffs:
2
2     BY: EDWARD L. NORWIND, ESQ.
3         Karp, Frosh, Lapidus, Wigodsky
3         & Norwind, P.A.
4         2273 Research Boulevard, Suite 200
4         Rockville, Maryland 20850
5         (301)948-3800
5
6
7   On behalf of the Defendants:
8     BY: MICHAEL A. DESANTIS, ESQ.
8         Hartel, Kane, DeSantis, MacDonald
9         & Howie, LLP
9         11720 Beltsville Drive, Suite 500
10        Beltsville, Maryland 20705
10        (301)486-1200
11
11
12  Also Present: Claudine Varesi, Interpreter
12
13            + + +
14
14        C O N T E N T S
15
15  WITNESS: SERGIO R. SANABRIA
16
17  EXAMINATION BY:          PAGE:
18    MR. NORWIND              3
19    MR. DeSantis            32
20        E X H I B I T S
21  DEPOSITION NO.    MARKED FOR IDENTIFICATION
22    None.
```

Page 3

```
1          P-R-O-C-E-E-D-I-N-G-S
2      (Thereupon, the interpreter was sworn to
3   translate the questions and answers accurately
4   and completely.)
5   Thereupon,
6          SERGIO R. SANABRIA
7   was called for examination by counsel and,
8   after having been duly sworn by the Notary,
9   was examined and testified as follows:
10      EXAMINATION BY COUNSEL FOR PLAINTIFFS
11      BY MR. NORWIND:
12      Q.   What is your name, sir?
13      A.   It is Sergio Rolando Sanabria.
14      Q.   And where do you live?
15      A.   I live in Hyattsville.  The whole
16  address would you like?
17      Q.   Please.
18      A.   5615 Queens Chapel Road,
19  Hyattsville P.G.  Zip code 20782.
20      Q.   How long have you lived there?
21      A.   I have lived there, I believe,
22  since 2003.
```

Page 4

```
1       Q.   What is your country?
2       A.   Guatemala.
3       Q.   When did you come to the United
4   States?
5       A.   I came in '99.
6       Q.   When you came to the United States
7   in 1999, where did you first live?
8       A.   The first place where I lived, I
9   lived for some time in Virginia, for some
10  months.  After that I came to Gaithersburg, to
11  live in Gaithersburg.
12      Q.   Where in Virginia did you live?
13      A.   I don't remember, to be very
14  honest.
15      Q.   What city?
16      A.   Arlington.
17      Q.   Who did you live with then?
18      A.   With some friends.
19      Q.   And then you moved to
20  Gaithersburg?
21      A.   Yes, I did move afterwards to
22  Gaithersburg.
```

Page 5

```
1       Q.   When did you move to Gaithersburg?
2       A.   I moved to Gaithersburg in -- I
3   will make a correction.  Like October of '99.
4       Q.   To Gaithersburg?
5       A.   Yes.  Gaithersburg.
6       Q.   And where in Gaithersburg did you
7   live?
8       A.   At Queen Orchard Boulevard.
9       Q.   Quince?
10      A.   Yes, Quince Orchard Boulevard.
11          THE INTERPRETER:  Mistake by
12  interpreter.
13          THE WITNESS:  I don't remember the
14  apartment number exactly.
15          BY MR. NORWIND:
16      Q.   And did you have that same address
17  in Gaithersburg until you moved to
18  Hyattsville?
19      A.   Yes.  I only lived at that place.
20      Q.   Do you have children who live with
21  you?
22      A.   No, my children are not living
```

Page 6

1. with me.
2.     Q.  Are they in Guatemala?
3.     A.  Yes.
4.     Q.  Do you understand English?
5.     A.  I understand fairly.  Not too
6. much.
7.     Q.  Where do you work, sir?
8.     A.  Right now I work in a company, an
9. installation company of, like, electronics,
10. dishwashers, microwaves, refrigerators.  We
11. take the deliveries and we make the
12. installations.
13.     Q.  What is the name of the company
14. you work for?
15.     A.  Donis Trucking Service.
16.          THE INTERPRETER:  The interpreter
17. is asking the spelling of it.
18.          THE WITNESS:  Donis Trucking
19. Service.  This is not the card, this is just
20. to show the name.  That is the way you write
21. Donis, D-O-N-I-S, Trucking Service.
22.          BY MR. NORWIND:

Page 7

1.     Q.  Is that the company card?
2.     A.  No.
3.     Q.  What was that?
4.          MR. DeSANTIS:  You can show it to
5. him.
6.          THE WITNESS:  It is the name of a
7. pastor but because she has the same name I am
8. showing it just for the spelling.
9.          MR. DeSANTIS:  Now I understand,
10. too.
11.          MR. NORWIND:  I get it.
12.          BY MR. NORWIND:
13.     Q.  Is this company owned by the
14. pastor or the pastor's husband?
15.     A.  Yes.  The name of the company is
16. the pastor's name, but this is a personal
17. card.  But the company's name is Donis
18. Trucking Service.
19.     Q.  So help me understand, who owns
20. the company?
21.     A.  I do believe it is her, it is her.
22. She is the owner of the company.

Page 8

1.     Q.  I see.  How long have you worked
2. for Donis Trucking?
3.     A.  For them?  October, two years.
4. Approximately, two years.
5.     Q.  Does this company have an office?
6.     A.  It is just one truck.  Just one
7. truck that they have.  But they don't have an
8. office.
9.     Q.  Who owns this truck?
10.     A.  I work for a company but I am not
11. sure since I work with one of the assistants.
12. But I don't really, I am not -- I do not know
13. the relationship or how the business works.
14.     Q.  Where do you report to work?
15.     A.  With the person I work with, he
16. comes from Gaithersburg.  He comes and picks
17. me up.  Because I take the car to Democracy
18. Boulevard, or sometimes to Silver Spring and
19. he picks me up.
20.     Q.  Help me understand.  You drive to
21. meet him?
22.     A.  Yes, I drive from my house, from

Page 9

1. my home to go and meet him.
2.     Q.  I see.  And sometimes you leave
3. the truck by Democracy Boulevard?
4.     A.  The truck, somebody brings it from
5. Gaithersburg.  And when we finish working, he
6. takes the truck back and I take my car and go
7. back home.
8.     Q.  So where do you meet the truck?
9.     A.  On Democracy Boulevard, at Old
10. Georgetown Road.  I meet him on Democracy
11. Boulevard and Old Georgetown.
12.     Q.  You park your car there?
13.     A.  Yes, I park my car behind some
14. businesses.
15.     Q.  Do you meet this truck in other
16. places like Silver Spring?
17.     A.  Yes, sometime in Silver Spring, at
18. Georgia Avenue and East West Highway.  I park
19. my car there.  There is a church where I go,
20. so I leave my car there at the church.
21.     Q.  What route do you take when you
22. are driving from your house to Democracy

Page 10

1  Boulevard to meet this truck?
2      A.  I take Queens Chapel Road and it
3  turns into Adelphi.  And Adelphi turns onto
4  University Boulevard.  I take 495 and then I
5  exit by Old Georgetown Road.
6      Q.    What route do you take from your
7  house to Georgia Avenue and East West Highway?
8      A.  I come from Queen Chapel Road.  I
9  take East West Highway.  That takes me to
10 Georgia Avenue.
11     Q.    Now, do you work full time?
12     A.  I work five days a week, sometimes
13 three, sometimes four.  Depending.
14     Q.    Where do you pick up the
15 appliances that you deliver and install?
16     A.  We go to the warehouse that is
17 close to Baltimore on Route 100.  I don't
18 remember the road but it is 170, because there
19 are some warehouses that are in that location,
20 in that area.
21     Q.    Whose warehouse is it?
22     A.  It is a delivery company, HBI.

Page 11

1  They distribute it to Home Depot, General
2  Electric, and some other companies that I
3  don't remember their names.
4      Q.    Tell me how it works with
5  deliveries.  For example, are these Home Depot
6  customers that you deliver to?
7      A.  Yes, they are clients from Home
8  Depot.
9         What I want to say is, the people
10 that are going to buy at Home Depot, they
11 offer -- some offers of installation and
12 people buy.  And when they buy, the delivery
13 arrives like three or four days after.
14     Q.    Other than Home Depot customers,
15 what other customers are you delivering to?
16     A.  General Electric Online on the
17 website.
18     Q.    Other companies, Maytag,
19 Whirlpool.  Any others?
20     A.  It is the brands that we deliver.
21 We deliver but for the other names I don't
22 remember.

Page 12

1      Q.    So, you, for Home Depot, for
2  example, you take out the old appliance and
3  you install the new one?
4      A.  Yes, that is correct.
5      Q.    Do you have a specific delivery
6  area?
7      A.  We deliver in all areas of
8  Baltimore, Frederick, West Virginia, and
9  sometimes in D.C., Washington.
10     Q.    How often do you deliver in D.C.?
11     A.  Sometimes three times a week.
12 Sometimes twice.  Depending because we don't
13 have specific routes.
14     Q.    On the average, are you making two
15 or three deliveries a week into D.C.?
16     A.  More.
17     Q.    How many more?
18     A.  When the truck goes to D.C. it
19 takes 12 deliveries, sometimes 14.  So 10 to
20 20 to 30.  Maybe 35 deliveries a week.
21     Q.    Into D.C.?
22     A.  Into D.C., yes.

Page 13

1      Q.    And is this something you do every
2  week in DC?
3      A.  Every week.  But other days, they
4  also send us elsewhere.
5      Q.    So, help me understand something.
6  Every week, on average, how many things do you
7  deliver?
8      A.  It is hard to tell to give you an
9  exact number.  There are clients that have
10 five appliances, maybe dishwasher, microwave.
11 It is several, maybe several for one client.
12 So I can't tell you a specific number.
13     Q.    On average, are you delivering 100
14 things per week?
15     A.  It is possible, yes.
16     Q.    Sometimes more and sometimes less?
17     A.  It would be less than 100.
18     Q.    What size truck is this?
19     A.  It is a 24 foot truck.  And 12,
20 6 feet and the length is 24 feet.
21        MR. DeSANTIS:  Is that 12 feet, 6
22 inches?

Page 14

1    THE WITNESS: 12 feet and
2  6 inches, correct.
3      BY MR. NORWIND:
4    Q.   So, sir, how many dishwasher boxes
5  can you fit on this truck at one time?
6    A.   Sometimes they give us 30, 30
7  pieces, and the truck goes full because they
8  go -- it takes several refrigerators and they
9  fill up the space.  When there are dishwashers
10 and smaller machines, it is possible there is
11 more space.  But, normally, there is whatever
12 the truck can carry, maybe 30 pieces.
13   Q.   And when they load the truck for
14 you --
15   A.   We fill it up.
16   Q.   So when you load the truck, are
17 these deliveries for that one day?
18   A.   Yes.  For that same day.
19   Q.   And then you empty the truck?
20   A.   Yes, until we finish the route.
21   Q.   And then next day all over again?
22   A.   The next day we unload the old

Page 15

1  machines and we load the new ones.
2    Q.   I understand.
3      Are you understanding my questions
4  in English?
5    A.   Yes.
6    Q.   So, have you been working like
7  this, like you have told us about, for the
8  past two years or so?
9    A.   Yes.
10   Q.   Do you drive the truck?
11   A.   We both carry the truck, both of
12 us.  When I am tired, he drives.  When he is
13 tired, I drive.
14   Q.   So two guys?
15   A.   Yes.
16   Q.   And you know the streets in the
17 District of Columbia?
18   A.   We need to see the map.  However,
19 there are many roads that I do know.  We know.
20   Q.   Before working for Donis Delivery,
21 where else did you work?
22   A.   I was working for a company, an

Page 16

1  air conditioning company.  But because I did
2  some air conditioning -- I did some training
3  for air conditioning and I was like eight
4  months working.
5    Q.   And the name of that company?
6    A.   It is Ebenezer.
7    Q.   Where is it located?
8    A.   Route 95 and -- it is north.  It
9  is the road --
10   Q.   Laurel, Columbia?
11   A.   No.  Fulton.  Let me check.  I
12 have a card right here.
13     MR. NORWIND: Fulton is 108.
14 Howard County, I think.
15     BY MR. NORWIND:
16   Q.   What kind of work did you do
17 there?
18   A.   I did there?
19   Q.   Yes.
20   A.   I used to help them pull the air
21 conditioner units, install them, install the
22 ducts, the air ducts, and the cleaning of the

Page 17

1  units, of the air units.
2    Q.   Did you go into the District of
3  Columbia for that job?
4    A.   Yes.  We went, probably three or
5  four times we went there.
6    Q.   Do you have any part time work?
7    A.   No.
8    Q.   So, full time with Donis now.  And
9  full time with the air conditioning company?
10   A.   Yes.
11   Q.   Did you have any part time work
12 when you worked for the air conditioning
13 company?
14   A.   No.
15   Q.   Now, before the air conditioning
16 company, where did you work?
17   A.   I worked with Belfort Furniture.
18   Q.   B-E-L-F-O-R-T?
19   A.   There is a picture here.
20     MR. DeSANTIS: Counsel, he brought
21 a photograph of the -- it wasn't of the truck,
22 it was the house that he lived in.  But it has

Page 18

1   a photograph of the truck parked to the side.
2         MR. NORWIND: Okay. Thank you.
3         BY MR. NORWIND:
4      Q.   What kind of work for Belfort did
5   you do?
6      **A.   We delivered new furniture to the**
7   **houses.**
8      Q.   When did you work for Belfort?
9      **A.   I started working for Belfort in**
10  **2001. 2001.**
11        MR. DeSANTIS: Until when?
12        THE WITNESS: Until I started
13  working for the air conditioning company. May
14  I write it? Until 2007.
15        BY MR. NORWIND:
16     Q.   About six years?
17     **A.   That I worked for the company,**
18  **yes.**
19     Q.   Did you bring their truck home
20  with you all the time?
21     **A.   Sometimes.**
22     Q.   So, where is Belfort Company

Page 19

1   located?
2      **A.   It is route -- I am not sure if it**
3   **is --**
4      Q.   In Northern Virginia?
5      **A.   Yes, Northern Virginia.**
6      Q.   And you made deliveries for them?
7      **A.   In Virginia?**
8      Q.   Well, I am asking what type of
9   work exactly did you do for them.
10     **A.   I loaded the furniture, put it in**
11  **the truck, and I delivered to the clients.**
12     Q.   Did you drive the truck?
13     **A.   Yes, I did drive the truck.**
14     Q.   Where did you make these
15  deliveries?
16     **A.   I did these deliveries in**
17  **Manassas, Arlington, Warrenton. We went to**
18  **Southern Maryland, like La Plata. All the way**
19  **to parts of Frederick. And times we would go**
20  **into Washington. Three or four times a month**
21  **we would go to Washington.**
22     Q.   Washington, D.C. for deliveries?

Page 20

1      **A.   Yes.**
2      Q.   Did you pick up at a warehouse or
3   the company store?
4      **A.   The company's warehouse.**
5      Q.   So, is it correct, Mr. Sanabria,
6   that you made deliveries for Belfort into
7   Washington, D.C. for almost six years three or
8   four times a month?
9      **A.   Three to four times a month. Not**
10  **every week.**
11     Q.   Now, sir, I want to ask you a few
12  personal questions. Please don't take offense
13  because there is some information we need for
14  the lawsuit.
15        Okay?
16     **A.   Yes.**
17     Q.   So, Number 1, do you have a
18  driver's license?
19     **A.   Yes.**
20     Q.   From what state?
21     **A.   From the State of Maryland.**
22     Q.   Do you have a commercial driver's

Page 21

1   license?
2      **A.   No.**
3      Q.   Do you have any -- have there been
4   any criminal charges against you?
5      **A.   No.**
6      Q.   Have you ever been arrested?
7      **A.   No.**
8      Q.   Have you ever gotten parking
9   tickets?
10     **A.   Yes.**
11     Q.   Have you ever gotten traffic
12  tickets for speeding, not stopping at red
13  lights, things like that?
14     **A.   The traffic tickets in Virginia**
15  **with the radar.**
16     Q.   I see. Any tickets from the
17  District of Columbia?
18     **A.   In what time? Which time are you**
19  **referring to?**
20     Q.   2001 to now.
21     **A.   Only one that they gave me two**
22  **months ago. I was talking with somebody and**

Page 22

1  the moment he came out he saw me, he saw me
2  with the telephone.
3      Q.   A cell phone in the truck?
4      A.   Yes.
5      Q.   It happened to me, too.
6          Are you a citizen of the United
7  States?
8      A.   No.
9      Q.   Do you have a green card?
10     A.   No.
11     Q.   Have you applied for citizenship
12  or green card?
13     A.   No. I am waiting for the law
14  because I do pay my taxes, have a tax ID. So
15  I am basically waiting.
16     Q.   All right. Are there -- well,
17  what is your status?
18         MR. DeSANTIS: I am going to
19  object and I am going to assert a Fifth
20  Amendment privilege based on what has been
21  said to date.
22         Do not answer the question.

Page 23

1          THE WITNESS: Okay.
2      BY MR. NORWIND:
3      Q.   Have you ever contacted the INS in
4  Washington D.C. for any reason?
5      A.   No.
6      Q.   Have you ever applied for
7  citizenship to an office in Washington, D.C.?
8      A.   No.
9      Q.   Have you ever applied for a green
10  card to an office in Washington, D.C.?
11     A.   No, I have not applied.
12     Q.   Have you ever been asked to leave
13  this country by the government?
14     A.   No.
15     Q.   Okay, Mr. Sanabria, we have talked
16  about some of your work activities. Let me
17  ask you now about some of your personal
18  activities.
19         Do you ever go into the District
20  of Columbia?
21     A.   Only when I work.
22     Q.   Do you have any family members in

Page 24

1  the District of Columbia?
2      A.   No.
3      Q.   Do you ever go to visit friends in
4  Washington, D.C.?
5      A.   No, I do not have any.
6      Q.   Do you go to church in Washington,
7  D.C.?
8      A.   No, not in D.C.
9      Q.   Do you go to ballgames, soccer
10  games, D.C. United, baseball, anything in
11  D.C.?
12     A.   No. No.
13     Q.   Do you ever drive through the
14  District of Columbia when you are not working?
15     A.   No. No. I do not.
16     Q.   In going to any of your jobs, have
17  you ever taken 295 or 395 to get to work?
18         MR. DeSANTIS: I object.
19         Through the District?
20         MR. NORWIND: Yes.
21         MR. DeSANTIS: Through the
22  District.

Page 25

1          THE WITNESS: To get to work?
2      MR. NORWIND: Yes.
3      THE WITNESS: No.
4      BY MR. NORWIND:
5      Q.   Have you ever taken Rhode Island
6  Avenue to get to work in the District?
7      A.   No. No, not Rhode Island. I
8  don't take that road -- to get to the
9  District?
10     Q.   Yes.
11         MR. DeSANTIS: To get to work.
12         THE WITNESS: In the mornings or
13  evening?
14         MR. NORWIND: Morning or evening.
15         THE WITNESS: When we are going to
16  work. When we are going to work we take Riggs
17  Road. This one takes us all the way to D.C.
18     BY MR. NORWIND:
19     Q.   Riggs Road into Northeast D.C.?
20     A.   Yes, Northeast.
21     Q.   So, when you are traveling on
22  Riggs Road, is that when you go to work?

Page 26

1    A.    When we are coming with a loaded
2    truck, we travel on that road.
3        Q.    And this is for which job?
4    A.    For this, for the appliance job.
5        MR. DeSANTIS:  I will just put on
6    the record that the answer was not responsive
7    to the question as the answer seems to
8    indicate that he was working at the time he is
9    traveling on Riggs Road.
10        BY MR. NORWIND:
11       Q.    Sir, have you ever gotten medical
12   care from a hospital in D.C.?
13   A.    Medical treatment, no.
14       Q.    Has a doctor ever treated you in
15   D.C.?
16   A.    No.
17       Q.    Have you ever been hurt on the
18   job?
19   A.    Yes.
20       Q.    Did you have worker's comp
21   benefits?
22   A.    No.

Page 27

1        Q.    Did you ever get hurt in D.C.?
2    A.    No.  When I got hurt it was when I
3    was working at the warehouse in Belfort, at
4    Belfort.
5        Q.    We have talked about your full
6    time jobs.  We have talked about no part time
7    work.  Do you have any personal business?
8    A.    No.
9        Q.    You don't sell anything.  Correct?
10   A.    I do not sell anything.
11       Q.    Do you shop in stores in the
12   District of Columbia?
13   A.    No.
14       Q.    Who were you working for in
15   January, 2006?
16   A.    I was working for J&B Trucking
17   Service.
18       Q.    What period of time did you work
19   for J&B?
20   A.    From 2001 to 2007.
21       Q.    Did J&B do deliveries for Belfort?
22   A.    Yes.

Page 28

1        Q.    So please help me understand
2    something.  For the entire time that you made
3    deliveries for Belfort, were you working for
4    J&B?
5    A.    In Belfort?  Could you please
6    repeat the question?
7        Q.    Okay.  I will try.  Let me
8    regroup.
9        When you made deliveries for
10   Belfort, is that when you were working for J&B
11   Trucking?
12   A.    Yes.
13       Q.    So J&B did the deliveries for
14   Belfort.  Is that right?
15   A.    For Belfort.
16       Q.    Like a delivery contractor?
17   A.    Yes, like a contractor.
18       Q.    Is that correct?
19   A.    Yes.
20       Q.    So you worked for J&B from 2001 to
21   2007.  Is that right?
22   A.    Yes.

Page 29

1        Q.    Are you a member of a union?
2    A.    No.  A union is like a syndicate,
3    a workers union?
4        Q.    Yes.
5    A.    No, I am not a member.
6        Q.    Sir, do you pay taxes for the
7    District of Columbia?
8    A.    I write my taxes.  I do.
9        Q.    To the District?
10   A.    But I couldn't tell you -- I do
11   not know if it is for the District or for
12   where.
13       Q.    Okay, Mr. Sanabria, you have the
14   picture showing us the Belfort truck at your
15   home.
16   A.    It is not my home.  But it is
17   where I used to park the truck because I leave
18   late from work and it was too tiring to go get
19   the car to the place where I used to park it
20   so I would go home.
21       Q.    Because it was a long workday?
22   A.    Yes.

Page 30

1     Q.   So, where is this located?  What
2  city is the house in?
3     **A.   Hyattsville.**
4     Q.   So, on your picture -- help your
5  lawyer understand something.  Does this truck
6  belong to J&B?
7     **A.   That truck, yes, it does.**
8     Q.   So it says Belfort on the truck,
9  but it is a J&B truck.  Is that correct?
10    **A.   The name of Belfort, they just put**
11 **it as an advertisement.  But the truck belongs**
12 **to J&B.**
13    Q.   Okay.  So, your paycheck came from
14 J&B and not from Belfort?
15    **A.   Yes, my check.**
16    Q.   You told us that Belfort is in
17 Chantilly or Reston.  Is that correct?
18    **A.   Herndon or Reston, but I don't**
19 **remember exactly.**
20    Q.   Tell us the route you took from
21 home to work at Belfort.
22    **A.   Because we used to go to different**

Page 31

1  **locations, sometimes I would take 495 to**
2  **take -- to drop my companion off at Georgia**
3  **Avenue, and from there I would go home.**
4  **Sometimes I would end up by Frederick, but I**
5  **had to come down here, and then I would go**
6  **and -- I would either park the truck or go**
7  **home.**
8     Q.   So, 495, you started on 495, to go
9  to work at Belfort?
10    **A.   In the morning, yes.  I take 495.**
11    Q.   And where do you get off of 495?
12    **A.   I exit on the toll road, taking**
13 **the toll road, and then 28 North.  Until -- I**
14 **would take another road but I don't remember**
15 **the name exactly to get to the warehouse.**
16    MR. NORWIND:  That might be all I
17 have.  Let me just regroup with my notes.  We
18 will take a short break.
19    MR. DeSANTIS:  Do you mind if I
20 clarify a couple of things while you look at
21 your notes?
22    MR. NORWIND:  No.

Page 32

1     EXAMINATION BY COUNSEL FOR DEFENDANTS
2        BY MR. DeSANTIS:
3     Q.   Have you ever lived in the
4  District of Columbia since coming from
5  Guatemala?
6     **A.   No, I have not.**
7     Q.   When you say you didn't know
8  whether you pay taxes to the District or
9  whoever, were you paying income taxes?
10    **A.   I pay my taxes.  I know that I**
11 **send two letters, one for one, side one to the**
12 **other, but I don't know exactly.**
13    Q.   When you pay taxes, is that for
14 the money that you earn?
15    **A.   How is that?**
16    Q.   Do you know what federal income
17 taxes are?
18    **A.   No.**
19    Q.   You had been asked about --
20    THE INTERPRETER:  Can I rephrase
21 it so he will understand?
22    The taxes that you pay?

Page 33

1     THE WITNESS:  They give me a form
2  from the company so I go to -- somebody does
3  the taxes for me.  I report my expenses,
4  everything that I spend, my tools and
5  everything.  And so they do the taxes for me,
6  the accountant does the taxes for me.
7        BY MR. DeSANTIS:
8     Q.   Okay.  All right.  And this Riggs
9  Road, you testified previously that you
10 traveled on Riggs Road in Washington on your
11 deliveries?
12    **A.   Yes, usually we take Riggs Road.**
13    Q.   I want to clarify, did you ever
14 take Riggs Road, did you ever take Riggs Road
15 leaving home or going back home after you
16 finished work?
17    THE INTERPRETER:  The interpreter
18 is going to repeat.
19    MR. DeSANTIS:  Let me rephrase.
20        BY MR. DeSANTIS:
21    Q.   Did you ever use Riggs Road in
22 D.C. other than when you were making

Page 34

1.  deliveries?
2      A.   I can take Riggs Road in parts.
3  But I am trying to say at this time --
4         THE INTERPRETER:  The attorney is
5  not asking when he is going to work, like he
6  is going on his free time to D.C.?
7         THE WITNESS:  Sometimes I take
8  Riggs Road when I am not going to work.
9         MR. DeSANTIS:  That clarifies it.
10        MR. NORWIND:  I don't have
11  anything else.
12        Thank for your time, Mr. Sanabria.
13        (Whereupon, at 2:01 p.m., the
14  deposition was concluded.)
15           + + +
16
17
18
19
20
21
22

Page 35

1     CERTIFICATE FOR READING AND SIGNING
2
3         I hereby certify that I have read
4  and examined the within transcript and the
5  same is a true and accurate record of the
6  testimony given by me.
7         Any corrections I have listed on
8  the separate errata sheet enclosed, indicating
9  the page and line number of each correction.
10
11
12
13
13  _____
14     SERGIO R. SANABRIA
14
15
15  _____
16     Date
16
17
18
19
20
21
22

1              CERTIFICATE OF NOTARY PUBLIC

2                    I, Renee A. Feder, the officer

3     before whom the foregoing deposition was

4     taken, do hereby certify that the witness,

5     whose testimony appears in the foregoing

6     deposition, was duly sworn by me; that the

7     testimony of said witness was taken by me in

8     shorthand and thereafter reduced to computer

9     type under my direction; that said deposition

10    is a true record of the testimony given by

11    said witness; that I am neither counsel for,

12    related to, nor employed by any of the parties

13    to which this deposition was taken; and

14    further, that I am not a relative or employee

15    of any attorney or counsel employed by the

16    parties hereto, nor financially or otherwise

17    interested in the outcome of the action.

18

19                    _____

19                    Notary Public in and for

20                    The State of Maryland

21    My Commission Expires:

21    September 1, 2008

22

## A

accountant 33:6
accurate 35:5
accurately 3:3
action 1:5 36:17
activities 23:16,18
address 3:16 5:16
Adelphi 10:3,3
advertisement 30:11
ago 21:22
air 16:1,2,3,20,22 17:1
  17:9,12,15 18:13
al 1:3,7
Amendment 22:20
answer 22:22 26:6,7
answers 3:3
apartment 5:14
appears 36:5
appliance 12:2 26:4
appliances 10:15 13:10
applied 22:11 23:6,9
  23:11
Approximately 8:4
area 10:20 12:6
areas 12:7
Arlington 4:16 19:17
arrested 21:6
arrives 11:13
asked 23:12 32:19
asking 6:17 19:8 34:5
assert 22:19
assistants 8:11
attorney 34:4 36:15
Avenue 9:18 10:7,10
  25:6 31:3
average 12:14 13:6,13

## B

B 2:20
back 9:6,7 33:15
BAILEY 1:3
ballgames 24:9
Baltimore 10:17 12:8
baseball 24:10
based 22:20
basically 22:15
beginning 1:19
behalf 1:20 2:1,7
Belfort 17:17 18:4,8,9
  18:22 20:6 27:3,4,21
  28:3,5,10,14,15
  29:14 30:8,10,14,16
  30:21 31:9
believe 3:21 7:21
belong 30:6
belongs 30:11
Beltsville 1:9,16,17 2:9
  2:10
benefits 26:21

Boulevard 2:4 5:8,10
  8:18 9:3,9,11 10:1,4
boxes 14:4
brands 11:20
break 31:18
bring 18:19
brings 9:4
brought 17:20
business 8:13 27:7
businesses 9:14
buy 11:10,12,12
B-E-L-F-O-R-T 17:18

## C

C 2:14
called 1:13 3:7
car 8:17 9:6,12,13,19
  9:20 29:19
card 6:19 7:1,17 16:12
  22:9,12 23:10
care 26:12
carry 14:12 15:11
cell 22:3
CERTIFICATE 35:1
  36:1
certify 35:3 36:4
Chantilly 30:17
Chapel 3:18 10:2,8
charges 21:4
check 16:11 30:15
children 5:20,22
church 9:19,20 24:6
citizen 22:6
citizenship 22:11 23:7
city 4:15 30:2
Civil 1:5
clarifies 34:9
clarify 31:20 33:13
Claudine 2:12
cleaning 16:22
client 13:11
clients 11:7 13:9 19:11
close 10:17
code 3:19
Collyer 1:6
Columbia 1:2 15:17
  16:10 17:3 21:17
  23:20 24:1,14 27:12
  29:7 32:4
come 4:3 10:8 31:5
comes 8:16,16
coming 26:1 32:4
commercial 20:22
Commission 36:21
comp 26:20
companies 11:2,18
companion 31:2
company 6:8,9,13 7:1
  7:13,15,20,22 8:5,10

10:22 15:22 16:1,5
  17:9,13,16 18:13,17
  18:22 20:3 33:2
company's 7:17 20:4
completely 3:4
computer 36:8
concluded 34:14
conditioner 16:21
conditioning 16:1,2,3
  17:9,12,15 18:13
contacted 23:3
contractor 28:16,17
correct 12:4 14:2 20:5
  27:9 28:18 30:9,17
correction 5:3 35:9
corrections 35:7
counsel 1:13 3:7,10
  17:20 32:1 36:11,15
country 4:1 23:13
County 16:14
couple 31:20
COURT 1:1
criminal 21:4
CSR 1:18
customers 11:6,14,15

## D

date 22:21 35:16
day 14:17,18,21,22
days 12:10 11:13 13:3
DC 13:2
Defendants 1:8 2:7
  32:1
deliver 10:15 11:6,20
  11:21 12:7,10 13:7
delivered 18:6 19:11
deliveries 6:11 11:5
  12:15,19,20 14:17
  19:6,15,16,22 20:6
  27:21 28:3,9,13
  33:11 34:1
delivering 11:15 13:13
delivery 10:22 11:12
  12:5 15:20 28:16
Democracy 8:17 9:3,9
  9:10,22
Depending 10:13
  12:12
deposition 1:10 2:21
  34:14 36:3,6,9,13
Depot 11:1,5,8,10,14
  12:1
DeSantis 1:15 2:8,8,19
  7:4,9 13:21 17:20
  18:11 22:18 24:18,21
  25:11 26:5 31:19
  32:2 33:7,19,20 34:9
different 30:22
direction 36:9

dishwasher 13:10 14:4
dishwashers 6:10 14:9
distribute 11:1
District 1:1,2 15:17
  17:2 21:17 23:19
  24:1,14,19,22 25:6,9
  27:12 29:7,9,11 32:4
  32:8
doctor 26:14
Donis 6:15,18,21 7:17
  8:2 15:20 17:8
drive 1:16 2:9 8:20,22
  15:10,13 19:12,13
  24:13
driver's 20:18,22
drives 15:12
driving 9:22
drop 31:2
ducts 16:22,22
duly 3:8 36:6
D-O-N-I-S 6:21
D.C 12:9,10,15,18,21
  12:22 19:22 20:7
  23:4,7,10 24:4,7,8,10
  24:11 25:17,19 26:12
  26:15 27:1 33:22
  34:6

## E

E 2:14,20
earn 32:14
East 9:18 10:7,9
Ebenezer 16:6
EDWARD 2:2
eight 16:3
either 31:6
Electric 11:2,16
electronics 6:9
employed 36:12,15
employee 36:14
empty 14:19
enclosed 35:8
English 6:4 15:4
entire 28:2
errata 35:8
ESQ 2:2,8
et 1:3,7
evening 25:13,14
exact 13:9
exactly 5:14 19:9 30:19
  31:15 32:12
examination 1:13 2:17
  3:7,10 32:1
examined 3:9 35:4
example 11:5 12:2
exit 10:5 31:12
expenses 33:3
Expires 36:21

## F

fairly 6:5
family 23:22
Feder 1:18 36:2
federal 32:16
feet 13:20,20,21 14:1
Fifth 22:19
fill 14:9,15
financially 36:16
finish 9:5 14:20
finished 33:16
first 4:7,8
fit 14:5
five 10:12 13:10
follows 3:9
foot 13:19
foregoing 36:3,5
form 33:1
four 10:13 11:13 17:5
  19:20 20:8,9
Frederick 12:8 19:19
  31:4
free 34:6
friends 4:18 24:3
Frosh 2:3
full 10:11 14:7 17:8,9
  27:5
Fulton 16:11,13
furniture 17:17 18:6
  19:10
further 36:14

## G

Gaithersburg 4:10,11
  4:20,22 5:1,2,4,5,6
  5:17 8:16 9:5
games 24:10
General 11:1,16
Georgetown 9:10,11
  10:5
Georgia 9:18 10:7,10
  31:2
give 12:18 14:7
given 35:6 36:10
go 9:1,6,19 10:16 14:8
  17:2 19:19,21 23:19
  24:3,6,9 25:22 29:18
  29:20 30:22 31:3,5,6
  31:8 33:2
goes 12:18 14:7
going 11:10 22:18,19
  24:16 25:15,16 33:15
  33:18 34:5,6,8
gotten 21:8,11 26:11
government 23:13
green 22:9,12 23:9
Guatemala 4:2 6:2
  32:5
guys 15:14

**H**

H 2:20
happened 22:5
hard 13:8
Hartel 1:15 2:8
HBI 10:22
help 7:19 8:20 13:5
  16:20 28:1 30:4
hereto 36:16
Herndon 30:18
Highway 9:18 10:7,9
home 9:1,7 11:1,5,7,10
  11:14 12:1 18:19
  29:15,16,20 30:21
  31:3,7 33:15,15
honest 4:14
hospital 26:12
house 8:22 9:22 10:7
  17:22 30:2
houses 18:7
Howard 16:14
Howie 1:15 2:9
hurt 26:17 27:1,2
husband 7:14
Hyattsville 3:15,19
  5:18 30:3

**I**

ID 22:14
IDENTIFICATION
  2:21
inches 13:22 14:2
income 32:9,16
indicate 26:8
indicating 35:8
information 20:13
INS 23:3
install 10:15 12:3
  16:21,21
installation 6:9 11:11
installations 6:12
interested 36:17
interpreter 2:12 3:2
  5:11,12 6:16,16
  32:20 33:17,17 34:4
Island 25:5,7

**J**

January 27:15
job 17:3 26:3,4,18
jobs 24:16 27:6
Judge 1:6
J&B 1:6 27:16,19,21
  28:4,10,13,20 30:6,9
  30:12,14

**K**

Kane 1:15 2:8
Karp 2:3

**KEITH** 1:3
kind 16:16 18:4
know 8:12 15:16,19,19
  29:11 32:7,10,12,16

**L**

L 2:2
La 19:18
Lapidus 2:3
late 29:18
Laurel 16:10
law 22:13
lawsuit 20:14
lawyer 30:5
leave 9:2,20 23:12
  29:17
leaving 33:15
length 13:20
letters 32:11
license 20:18 21:1
lights 21:13
line 35:9
listed 35:7
live 3:14,15 4:7,11,12
  4:17 5:7,20
lived 3:20,21 4:8,9
  5:19 17:22 32:3
living 5:22
LLP 1:16 2:9
load 14:13,16 15:1
loaded 19:10 26:1
located 16:7 19:1 30:1
location 10:19
locations 31:1
long 3:20 8:1 29:21
look 31:20

**M**

MacDonald 1:15 2:8
machines 14:10 15:1
making 12:14 33:22
Manassas 19:17
map 15:18
MARKED 2:21
Maryland 1:9,17,19
  2:4,10 19:18 20:21
  36:20
Maytag 11:18
medical 26:11,13
meet 8:21 9:1,8,10,15
  10:1
member 29:1,5
members 23:22
MICHAEL 2:8
microwave 13:10
microwaves 6:10
mind 31:19
Mistake 5:11
moment 22:1

money 32:14
month 19:20 20:8,9
months 4:10 16:4
  21:22
morning 25:14 31:10
mornings 25:12
move 4:21 5:1
moved 4:19 5:2,17

**N**

N 2:14,14
name 3:12 6:13,20 7:6
  7:7,15,16,17 16:5
  30:10 31:15
names 11:3,21
need 15:18 20:13
neither 36:11
new 12:3 15:1 18:6
normally 14:11
north 16:8 31:13
Northeast 25:19,20
Northern 19:4,7
Norwind 2:2,3,18 3:11
  5:15 6:22 7:11,12
  14:3 16:13,15 18:2,3
  18:15 23:2 24:20
  25:2,4,14,18 26:10
  31:16,22 34:10
Notary 1:18 3:8 36:1
  36:19
notes 31:17,21
notice 1:14
number 5:14 13:9,12
  20:17 35:9

**O**

O 2:14
object 22:19 24:18
October 5:3 8:3
offense 20:12
offer 11:11
offers 11:11
office 8:5,8 23:7,10
officer 36:2
offices 1:14
Okay 18:2 20:15 23:1
  23:15 28:7 29:13
  30:13 33:8
old 9:9,11 10:5 12:2
  14:22
ones 15:1
Online 11:16
oral 1:13
Orchard 5:8,10
outcome 36:17
owned 7:13
owner 7:22
owns 7:19 8:9

**P**

page 2:17 35:9
park 9:12,13,18 29:17
  29:19 31:6
parked 18:1
parking 21:8
part 17:6,11 27:6
parties 1:21 36:12,16
parts 19:19 34:2
pastor 7:7,14
pastor's 7:14,16
pay 22:14 29:6 32:8,10
  32:13,22
paycheck 30:13
paying 32:9
people 11:9,12
period 27:18
person 8:15
personal 7:16 20:12
  23:17 27:7
phone 22:3
photograph 17:21 18:1
pick 10:14 20:2
picks 8:16,19
picture 17:19 29:14
  30:4
pieces 14:7,12
place 4:8 5:19 29:19
places 9:16
Plaintiffs 1:4,14 2:1
  3:10
Plata 19:18
please 3:17 20:12 28:1
  28:5
possible 13:15 14:10
present 1:20 2:12
previously 33:9
privilege 22:20
probably 17:4
Public 1:18 36:1,19
pull 16:20
pursuant 1:14
put 19:10 26:5 30:10
P-R-O-C-E-E-D-I-N...
  3:1
P.A 2:3
P.G 3:19
p.m 1:19 34:13

**Q**

Queen 5:8 10:8
Queens 3:18 10:2
question 22:22 26:7
  28:6
questions 3:3 15:3
  20:12
Quince 5:9,10

**R**

R 1:6,12 2:15 3:6 35:14
radar 21:15
read 35:3
READING 35:1
really 8:12
reason 23:4
record 26:6 35:5 36:10
red 21:12
reduced 36:8
referring 21:19
refrigerators 6:10 14:8
regroup 28:8 31:17
related 36:12
relationship 8:13
relative 36:14
remember 4:13 5:13
  10:18 11:3,22 30:19
  31:14
Renee 1:17 36:2
repeat 28:6 33:18
rephrase 32:20 33:19
report 8:14 33:3
Research 2:4
respective 1:20
responsive 26:6
Reston 30:17,18
Rhode 25:5,7
Riggs 25:16,19,22 26:9
  33:8,10,12,14,14,21
  34:2,8
right 6:8 16:12 22:16
  28:14,21 33:8
road 3:18 9:10 10:2,5,8
  10:18 16:9 25:8,17
  25:19,22 26:2,9
  31:12,13,14 33:9,10
  33:12,14,14,21 34:2
  34:8
roads 15:19
Rockville 2:4
Rolando 3:13
route 9:21 10:6,17
  14:20 16:8 19:2
  30:20
routes 12:13

**S**

S 2:14,20
Sanabria 1:12 2:15 3:6
  3:13 20:5 23:15
  29:13 34:12 35:14
saw 22:1,1
says 30:8
see 8:1 9:2 15:18 21:16
sell 27:9,10
send 13:4 32:11
separate 35:8
September 36:21
Sergio 1:12 2:15 3:6,13

35:14
**Service** 1:6 6:15,19,21
7:18 27:17
**sheet** 35:8
**shop** 27:11
**short** 31:18
**shorthand** 36:8
**show** 6:20 7:4
**showing** 7:8 29:14
**side** 18:1 32:11
**SIGNING** 35:1
**Silver** 8:18 9:16,17
**sir** 3:12 6:7 14:4 20:11
26:11 29:6
**six** 18:16 20:7
**size** 13:18
**smaller** 14:10
**soccer** 24:9
**somebody** 9:4 21:22
33:2
**Southern** 19:18
**space** 14:9,11
**specific** 12:5,13 13:12
**speeding** 21:12
**spelling** 6:17 7:8
**spend** 33:4
**Spring** 8:18 9:16,17
**started** 18:9,12 31:8
**state** 1:19 20:20,21
36:20
**States** 1:1 4:4,6 22:7
**status** 22:17
**stopping** 21:12
**store** 20:3
**stores** 27:11
**streets** 15:16
**Suite** 1:16 2:4,9
**sure** 8:11 19:2
**sworn** 3:2,8 36:6
**syndicate** 29:2

**T**

**T** 2:14,14,20
**take** 6:11 8:17 9:6,21
10:2,4,6,9 12:2 20:12
25:8,16 31:1,2,10,14
31:18 33:12,14,14
34:2,7
**taken** 24:17 25:5 36:4
36:7,13
**takes** 9:6 10:9 12:19
14:8 25:17
**talked** 23:15 27:5,6
**talking** 21:22
**tax** 22:14
**taxes** 22:14 29:6,8 32:8
32:9,10,13,17,22
33:3,5,6
**telephone** 22:2

**tell** 11:4 13:8,12 29:10
30:20
**testified** 3:9 33:9
**testimony** 35:6 36:5,7
36:10
**Thank** 18:2 34:12
**things** 13:6,14 21:13
31:20
**think** 16:14
**three** 10:13 11:13
12:11,15 17:4 19:20
20:7,9
**tickets** 21:9,12,14,16
**time** 4:9 10:11 14:5
17:6,8,9,11 18:20
21:18,18 26:8 27:6,6
27:18 28:2 34:3,6,12
**times** 12:11 17:5 19:19
19:20 20:8,9
**tired** 15:12,13
**tiring** 29:18
**told** 15:7 30:16
**toll** 31:12,13
**tools** 33:4
**traffic** 21:11,14
**training** 16:2
**transcript** 35:4
**translate** 3:3
**travel** 26:2
**traveled** 33:10
**traveling** 25:21 26:9
**treated** 26:14
**treatment** 26:13
**truck** 8:6,7,9 9:3,4,6,8
9:15 10:1 12:18
13:18,19 14:5,7,12
14:13,16,19 15:10,11
17:21 18:1,19 19:11
19:12,13 22:3 26:2
29:14,17 30:5,7,8,9
30:11 31:6
**Trucking** 1:6 6:15,18
6:21 7:18 8:2 27:16
28:11
**true** 35:5 36:10
**try** 28:7
**trying** 34:3
**Tuesday** 1:9
**turns** 10:3,3
**twice** 12:12
**two** 8:3,4 12:14 15:8
15:14 21:21 32:11
**type** 19:8 36:9

**U**

**understand** 6:4,5 7:9
7:19 8:20 13:5 15:2
28:1 30:5 32:21
**understanding** 15:3

**union** 29:1,2,3
**United** 1:1 4:3,6 22:6
24:10
**units** 16:21 17:1,1
**University** 10:4
**unload** 14:22
**use** 33:21
**usually** 33:12

**V**

**Varesi** 2:12
**Virginia** 4:9,12 12:8
19:4,5,7 21:14
**visit** 24:3
**vs** 1:5

**W**

**waiting** 22:13,15
**want** 11:9 20:11 33:13
**warehouse** 10:16,21
20:2,4 27:3 31:15
**warehouses** 10:19
**Warrenton** 19:17
**Washington** 12:9
19:20,21,22 20:7
23:4,7,10 24:4,6
33:10
**wasn't** 17:21
**way** 6:20 19:18 25:17
**website** 11:17
**week** 10:12 12:11,15
12:20 13:2,3,6,14
20:10
**went** 17:4,5 19:17
**West** 9:18 10:7,9 12:8
**Whirlpool** 11:19
**Wigodsky** 2:3
**witness** 2:15 5:13 6:18
7:6 14:1 18:12 23:1
25:1,3,12,15 33:1
34:7 36:4,7,11
**work** 6:7,8,14 8:10,11
8:14,15 10:11,12
15:21 16:16 17:6,11
17:16 18:4,8 19:9
23:16,21 24:17 25:1
25:6,11,16,16,22
27:7,18 29:18 30:21
31:9 33:16 34:5,8
**workday** 29:21
**worked** 8:1 17:12,17
18:17 28:20
**workers** 29:3
**worker's** 26:20
**working** 9:5 15:6,20
15:22 16:4 18:9,13
24:14 26:8 27:3,14
27:16 28:3,10
**works** 8:13 11:4

**write** 6:20 18:14 29:8

**X**

**X** 2:20

**Y**

**years** 8:3,4 15:8 18:16
20:7

**Z**

**Zip** 3:19

**1**

**1** 20:17 36:21
**1:08** 1:19
**1:08-cv-00644-RMC**
1:6
**10** 12:19
**100** 10:17 13:13,17
**108** 16:13
**11720** 1:16 2:9
**12** 12:19 13:19,21 14:1
**14** 12:19
**170** 10:18
**1999** 4:7

**2**

**2:01** 34:13
**20** 12:20
**200** 2:4
**2001** 18:10,10 21:20
27:20 28:20
**2003** 3:22
**2006** 27:15
**2007** 18:14 27:20
28:21
**2008** 1:9 36:21
**20705** 1:17 2:10
**20782** 3:19
**20850** 2:4
**2273** 2:4
**24** 13:19,20
**27** 1:9
**28** 31:13
**295** 24:17

**3**

**3** 2:18
**30** 12:20 14:6,6,12
**301)486-1200** 2:10
**301)948-3800** 2:5
**32** 2:19
**35** 12:20
**395** 24:17

**4**

**495** 10:4 31:1,8,8,10,11

**5**

**500** 1:16 2:9
**5615** 3:18

**6**

**6** 13:20,21 14:2

**9**

**95** 16:8
**99** 4:5 5:3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH BAILEY, *et ux.*        :
                              :
            Plaintiffs,       :
                              :
            v.                :    Case No: 1:08-cv-00644-RMC
                              :    Judge Rosemary M. Collyer
J & B TRUCKING SERVICES,      :
INC., *et al.*                :
                              :
            Defendants.       :

## ORDER

UPON CONSIDERATION of Defendants J&B Trucking Services, Inc. and Sergio R. Sanabria's cross-motion for summary judgment as to Defendants' liability, any opposition thereto, and good cause having been shown, it is, by the United States District Court for the District of Columbia, this _____ day of _____, 2008, hereby

**ORDERED** that Plaintiffs' Motion For Summary Judgment As To Defendants' Liability is DENIED; and it is further

**ORDERED** that the Defendants' Cross-Motion For Summary Judgment As To Defendants' Liability be and hereby is GRANTED; and it is further

**ORDERED** that summary judgment be entered for the Defendants on the issue of liability; and it if further

**ORDERED** that this action be DISMISSED against J&B Trucking Services, Inc. and Sergio R. Sanabria with PREJUDICE.

SO ORDERED, this _____ day of _____, 2008.

                              _____
                              ROSEMARY M. COLLYER
                              United States District Judge

copies to:

Neil J. MacDonald, #433699
11720 Beltsville Drive
Suite 500
Beltsville, Maryland 20705
Telephone:  (301) 486-1200
Facsimile:  (301) 486-0935

Steven VanGrack, Esquire
Edward L. Norwind, Esquire
Murray D. Scheel, Esquire
KARP, FROSH, LAPIDUS,
WIGODSKY & NORWIND, P.A.
2273 Research Boulevard
Suite 200
Rockville, Maryland  20850
Telephone: (301) 948-3800
Facsimile: (301) 948-5449

E:\NJM\Bailey v. J & B Trucking et al\MSJ.Order.8.06.08.wpd