**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KEITH BAILEY *et ux.*                     :
                                          :
            Plaintiffs,                    :
                                          :
v.                                        :     Case No.: 1:08-cv-00644-RMC
                                          :     Judge Rosemary M. Collyer
J & B TRUCKING SERVICES, INC., *et al.* :
                                          :
                                          :
            Defendants.                    :

**PLAINTIFFS' REPLY
TO DEFENDANT J&B TRUCKING SERVICES INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS'
LIABILITY
AND PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

COME NOW the Plaintiffs, by and through counsel, and respectfully reply to Defendant

J&B Trucking Services Inc.'s Response to the Plaintiff's Motion for Summary Judgment as to

Defendants' Liability, and respond in opposition to the Defendant's Cross-Motion for Summary

Judgment.  The Defendant has failed to adduce evidence, or even allege any potential evidence,

rebutting negligence and proximate causation in this case.  The sole specific evidence on which it

relies to rebut liability are the affidavits of Defendant Sanabria and Rosa H. Lopez stating that

the truck in question was parked on private property when it was stolen.  Whether the truck was

parked on the street, as Plaintiffs aver, or on the Defendant's private driveway is legally

immaterial, however, because under the District's controlling case law, *Ross v. Hartman* applies

in either case.  This issue is a complete red herring.

Finally, the Defendant's argument for summary judgment based on the application of

Maryland law is without merit, because under Maryland's rule of *lex loci delicti*, Maryland has

no interest in adjudicating this case. The District, in contrast, has a paramount interest, because the collision at issue occurred in the District, the injuries were suffered by District residents, the injuries were treated in the District, the thief was prosecuted in the District, and the negligence occurred in the District metropolitan area, less than two miles over the District border, in the course of business the Defendants directed, in part, at District residents.

## I.    Material Facts at Issue

### A.    Material Facts on Which the Parties Agree

According to the Defendant's Response (6-7), the parties agree that the following facts are material to the case and are not in genuine dispute:

1.    On the date of the alleged occurrence (January 7, 2006), Onorio Cifuentes-Lopez stole a 2002 white Isuzu box truck. *Compare* Def.'s Resp. 6-7, ¶ 1, *with* Compl. ¶¶ 13-16, and Pls.' Mot. for Summ. J. 4, ¶ Q.

2.    The Defendant concedes the truck was stolen "from the residence of Mr. Sanabria." Def.'s Resp. 6-7, ¶ 1. Insofar as "from the residence" means from the immediate vicinity of Mr. Sanabria's residence, the Plaintiffs concur; the Plaintiffs dispute, however, that the truck was parked in Mr. Sanabria's private driveway.[1]

3.    "At the time of the theft, Mr. Sanabria resided at 5615 Queens Chapel Road in Hyattsville, Maryland." Def.'s Resp. 7, ¶ 2; *compare with* Pls.' Mot. 3, ¶ M.

4.    "At the time preceding the theft, Mr. Sanabria had left the keys to the subject truck within the truck's ignition." Def.'s Resp. 7, ¶ 4; *compare with* Compl. ¶ 14; Pls.' Mot. 3-4, ¶¶ N-P.

---

[1] This dispute, however, is irrelevant to the determination of this case, as discussed below.

5.    "The 2002 white Isuzu box truck was operated by Onorio Cifuentes-Lopez without consent, expressed or implied."  Def.'s Resp. 7, ¶ 5; *compare with* Compl. ¶ 16; Pls.' Mot. 3-4, ¶ Q.

6.    Onorio Cifuentes-Lopez drove the 2002 white Isuzu box truck from Maryland into the District of Columbia and "was subsequently involved" in a collision there. Def.'s Resp. 7, ¶ 6; *compare with* Compl. ¶ 18-19; Pls.' Mot. 2 ¶ D, 4 ¶ S.

**B.    Material Facts Which are Beyond Genuine Dispute**

*Facts regarding liability and Respondeat Superior*

In its Response, the Defendant failed to produce any evidence to rebut the following facts demonstrated by the Plaintiffs, and indeed failed to indicate what, if any, possible evidence there could be to rebut these facts:

1.    That the white Isuzu box truck that Onorio Cifuentes-Lopez crashed into Mr. Bailey was owned by Jose Benjamin Lainez, the owner and resident agent of J&B Trucking Services, Inc., 8622 Watershed Court, Gaithersburg, Maryland (Pls.' Mot. Exs. A & F);

2.    That at the time of collision in question, J&B Trucking Services, Inc., employed Sergio R. Sanabria to deliver furniture in the Washington metropolitan area, including in the District of Columbia (Pls.' Mot. Ex. H, Sanabria Dep. 18:4-14, 28:9-22, May 27, 2008);

3.    That J&B Trucking Services had entrusted Mr. Sanabria with driving and operating the 2002 white Isuzu box truck (Pls.' Mot. Ex. H, Sanabria Dep. 19:10-13);

4.    That Mr. Sanabria had the permission of his employer, J&B Trucking Services, Inc., to bring the 2002 white Isuzu box truck home at night in order to facilitate his deliveries the following morning (Pls.' Mot. Ex. H, Sanabria Dep. 18:19-21, 29:13-30:12);

5.    That Mr. Sanabria started the truck on the morning of January 7, 2006, in the course of preparing to make his deliveries for that day on behalf of J&B Trucking (Pls.' Mot. Ex. I);

6.    That Mr. Sanabria left the truck running and unattended while he went back into his home (Pls.' Mot. Ex. I.) .

Despite producing two affidavits in support of its Response in Opposition, one from Defendant Sanabria, and one from a non-party witness, Defendant J&B Trucking Services produced no affidavit of its own or other documentary evidence in its Response to challenge the six facts listed above. Nowhere in its Response does J&B Trucking show facts challenging that it owned the truck in question; that it employed Defendant Sanabria at the time; that it had entrusted him with the truck; that Defendant Sanabria was using the truck in the scope of his employment; or that he had left the truck running and unattended while he was in his home. Moreover, J&B Trucking did not aver that there was any potentially discoverable evidence or testimony that could challenge these facts.[2] The Defendant's silence on these six facts is telling, especially in the face of the Police Report showing ownership of the truck by Jose Benjamin Lainez; Mr. Lainez's listing in Maryland taxation and assessments database as a principal of J&B Trucking Services; and Defendant Sanabria's prior testimony that he was employed at the

---

[2]    While, for purposes of its Response, J&B Trucking was able to secure an affidavit from Defendant Sanabria attesting to the location of the truck at the time it was stolen, it is telling that J&B Trucking was unable to secure any further affidavit testimony from Mr. Sanabria to challenge Mr. Sanabria's report to Detective Wheeler, on the day of the collision, that he had started the truck in order to make his deliveries, and that he had left the truck running and unattended while he was inside his home. (Pls.' Mot. Ex. I (United States v. Cifuentes, CR-F155-06, D.C. Super. Ct., Prelim. Hr'g Tr. 5:1-5, Feb. 2, 2006 (Testimony of Detective Elgin Wheeler).)

    Furthermore, the Defendant's argument (Resp. 5) that Defendant Sanabria was benefiting himself, not J&B Trucking, when he brought the truck home is inapposite. The issue is whether, at the time of the theft, Defendant Sanabria was operating the truck within the scope of J&B Trucking's permission, and within the scope of his employment. J&B has not offered any affidavit of its own to assert that Defendant Sanabria had no such permission to bring the truck home with him, or that he was not supposed to make deliveries that morning.

time by J&B Trucking, and that it had entrusted him with the truck.  Given the factual record produced by the Plaintiffs, and the Defendant's deafening silence in the face of those facts, the facts itemized as (B)(1)-(6) above cannot be in genuine dispute.

### *Facts regarding proximate cause and damages*

In a bizarre twist of logic, the Defendant argues (Resp. 3-4, 6) that only events that occurred in Maryland are material, and that the theft and the collision in the District are immaterial to the Defendant's liability.  To the contrary, the theft and the collision are critical to proving that Defendant Sanabria's alleged negligence proximately caused the Plaintiffs' injuries and resultant damages.

Indeed, the Defendant itself points out that the Plaintiff must prove not only that the Defendant breached a duty to the Plaintiffs, but also that the breach proximately caused the Plaintiffs' injuries, and that actual loss or damage resulted.  *See* Def.'s Resp. 2 (*citing B.N. v. K.K.*, 312 Md. 135, 141 (1988); W.P. Keeton, *Prosser and Keeton on the Law of Torts*, 164-65 (5th ed. 1984); *Powell v. District of Columbia*, 634 A.2d 403, 406 (D.C. 1993)).  Under the specific rule of *Ross v. Hartman*, the Plaintiffs must prove that Defendant Sanabria (a) left the ignition key in the vehicle unattended, that (b) a thief stole the vehicle while it was unattended, and that (c) the thief caused injury to the Plaintiffs shortly thereafter.  *See Gaither v. Myers*, 131 U.S. App. D.C. 216, 220, 404 F.2d 216, 220 (1968) (*citing Ross v. Hartman*, 78 U.S. App. D.C. 217, 139 F.2d 14 (1943)).  To do so, the Plaintiffs must prove not only that Defendant Sanabria was negligent, but also that Mr. Cifuentes-Lopez stole the unattended truck and collided with Plaintiff Keith Bailey in a negligent manner, causing him injuries.  According to the authorities on which the Defendant relies, therefore, the facts regarding the theft and the alleged collision in the District are indeed material, since they "establish an element of [the] claim . . . and, therefore,

affect the outcome of the action." Def.'s Resp. 2 (*quoting Simpkins v. United States*, 253 F. Supp. 2d 4, 6 (D.D.C. 2003) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

To that end, the Plaintiffs produced a police report, testimony of the investigating detective (based in part on Defendant Sanabria's own statements), an emergency medical technician report, Mr. Cifuentes-Lopez's own guilty plea, and an affidavit from Plaintiff Keith Bailey, which together show:

7.      That after stealing the truck in question, Mr. Cifuentes-Lopez drove down Queens Chapel Road in the direction of the District of Columbia (Pls.' Mot. Ex. A at 2, 3; Ex. N Bailey Aff. ¶ 5);

8.      That he entered the intersection of South Dakota and Michigan Avenues, N.E., at an excessive rate of speed and against a red traffic signal (Pls.' Mot. Ex. A at 2, 3; Ex. L at 1, 2);

9.      That Mr. Cifuentes-Lopez collided with Plaintiff Keith Bailey's vehicle (Pls.' Mot. Ex. A at 2, 3);

10.     That Mr. Bailey had entered the intersection in compliance with a green traffic signal, while driving southbound on South Dakota Avenue, N.E. (Pls.' Mot. Ex. A at 2, 3; Bailey Aff., Ex. N ¶ 4);

11.     That the collision occurred less than two miles away from Defendant Sanabria's residence (Pls.' Mot. Ex. H, Sanabria Dep. 3:12-22; Ex. J);

12.     That the collision occurred within approximately five minutes of the theft (Pls.' Mot. Exs. A at 1, I; Def.'s Resp. Ex. C)[3];

---

[3] The Hyattsville City Police Incident Report states that the theft occurred at approximately 4:45 a.m. (Def.'s Resp. Ex. C); the D.C. Traffic Accident Report states that the collision occurred at approximately 4:50 a.m., the same day (Pls.' Mot. Ex. A at 1).

13.      That the collision caused Mr. Bailey to suffer blunt force trauma (Pls.'
Mot. Ex. A at 4; Ex.D at 1).

In its Response, the Defendant does not offer any evidence or even any suggestion of
possible evidence that could rebut these facts, nor can the Defendant point to any potential
evidence that would genuinely dispute these facts, given the subsequent police investigation,
prosecution, plea and conviction of Mr. Cifuentes-Lopez for the aggravated assault of Mr. Bailey
with J&B Trucking's vehicle.[4]  The Defendant acknowledges that the police report indicates Mr.
Bailey entered the intersection in accordance with a green light.  (Def.'s Resp. 4.)  The
Defendant claims in conclusory fashion that "the record does not address other factors which
must be considered in order to come to the legal conclusion that the Plaintiff was operating the
vehicle in a 'lawful manner,'" and that therefore "this 'fact' is in genuine dispute."[5]  (Def.'s
Resp. 4-5.)  Yet nowhere does the Defendant state what those "other factors" might be.  Mere
conclusory allegations of a dispute as to material facts are insufficient to defeat a motion for
summary judgment.   "'[T]he nonmoving party may not rely solely on allegations or conclusory
statements,' but must present specific facts showing a genuine issue."  Def.'s Resp. 13 (*quoting*
*Council for Responsible Nutrition v. Hartford Cas. Ins. Co.*, 2007 U.S. Dist. LEXIS 49963
(D.D.C. 2007) (*citing Greene v. Dalton*, 164 F.2d 671, 675 (D.C. Cir. 1999)); *citing* Fed. R. Civ.
Pro. 56(e)(2)).  The Defendant has failed to show any specific facts either challenging liability or
causation, or demonstrating any contributory negligence.  The Defendant therefore tacitly

---

[4]  It should be noted that the Defendant, in its Response, did not challenge the Plaintiffs' assertion in their
Motion that the plea and conviction could be entered as evidence against the Defendants at trial.

[5]  Contrary to the Defendant's assertion, the lawfulness of Mr. Bailey's behavior *is* relevant and material
precisely because it forecloses any defense of contributory negligence, "and therefore, affect[s] the
outcome of the action."  *Celotex Corp.*, 477 U.S. at 322.  This is especially true given that the Defendant
alleges, albeit in conclusory fashion, "other factors" on which it claims it could base such a defense.
(Resp. 4.)

acknowledges by its silence that the facts regarding the theft of the truck and the collision in the District are beyond genuine dispute.

Further, as the Defendant also acknowledges, the Plaintiff must show "that actual loss or damage resulted" from the collision. *See* Def.'s Resp. 2 (*citing B.N.*, 312 Md. at 141; *Prosser and Keeton*, 164-65; *Powell*, 634 A.2d at 406).[6] The Defendant does not challenge the Plaintiffs' evidence showing:

13.     That Mr. Bailey suffered physical injuries as a result of the collision, including blunt force trauma to the skull (Pls.' Mot. Ex. A at 4; Ex. D at 1);

14.     That he was hospitalized as a result on an emergency basis at Washington Hospital Center for ten days (Pls.' Mot. Ex. D at 1, 3, 4);

15.     That he was then transferred to a rehabilitation hospital where he remained an inpatient till February 7, 2006 (Pls.' Mot. Ex. E).

Since the Plaintiffs' Motion was for judgment as to liability and causation, the exact extend of the Plaintiffs' damages is not at issue here. On this the Defendant is correct. *Whether* actual loss or damage resulted from the collision *is* a material issue, however, and, again, the Defendant has failed to show evidence disputing that damage resulted, and has failed even to allege any possible evidence that could genuinely dispute that Mr. Bailey suffered damages from the collision.

As a result, the Defendant's own Response to the Plaintiffs' Motion leaves no genuine dispute that on January 6, 2006, Defendant Sanabria left Defendant J&B Trucking's vehicle running, with the keys in the ignition, while he left it unattended, and that Onorio Cifuentes-Lopez then stole the vehicle, drove it into the District, and collided with Mr. Bailey in a

---

[6] The Defendant's argument (Resp. 3) that the Plaintiffs' alleged facts pertaining to the issue of damages "are . . . not material to the inquiry of liability" and "should not be considered" is as contrary to the law and its own cited authorities as is its argument that the alleged collision is irrelevant to liability.

negligent (if not reckless) manner, causing Mr. Bailey serious injuries.  Nor is there any serious

dispute that all of these events happened within minutes, and within two miles, of each other.

There can also no longer remain any genuine dispute that the truck belonged to the Defendant,

that the Defendant had entrusted it to Defendant Sanabria, and that Defendant Sanabria was

using it within the scope of his employment and for his work for J&B Trucking when he left it

running with the keys in the ignition.

### C.    Sole Fact in Open Dispute

The only fact in genuine dispute is whether the truck at issue was parked in Mr.

Sanabria's driveway when it was stolen, or whether it was parked in some public location

nearby.  However, the Plaintiffs dispute whether the distinction between Mr. Sanabria's

driveway and an adjacent public street or lot is even material.  Whether parked on the street or on

a driveway, the truck was readily accessible to any member of the general public who happened

to pass by.

In his deposition, Defendant Sanabria was asked about a picture of the Isuzu box truck in

question:

> Question:     Okay, Mr. Sanabria, you have the picture showing
> us the Belfort [i.e., J&B's] truck at your home.
>
> Mr. Sanabria:  It is not my home.  But it is where I used to park the
> truck because I leave late from work and it was too
> tiring to go get the car to the place where I used to
> park it so I would go home.
>
> Question:     So where is this located?  What city is this house
> in?
>
> Mr. Sanabria:  Hyattsville.

(Pls.' Mot. Ex. H, Sanabria Dep. 29:13-30:3.)  His testimony indicates that Mr. Sanabria did not

park the truck at his home, but rather in the vicinity of his home in some publicly accessible

location.  The Defendant, however, has since produced two affidavits, one from Mr. Sanabria

and one from another person living at his home, attesting that the truck in question was parked

on Mr. Sanabria's driveway at the time of the theft.  (Def.'s Resp. Exs. A & B.)  Therefore, there

is a genuine dispute as to whether the truck was parked in Mr. Sanabria's driveway, or instead on

the street or in some other publicly accessible location.[7]

Nevertheless, as the Plaintiffs explain below, this dispute is not material, since even if it

was in Mr. Sanabria's driveway the truck was still openly accessible to the public.  There is

therefore no genuinely disputed material fact that prevents entering partial summary judgment

for the Plaintiffs as to liability and causation.

## II.    Whether the Defendant's truck was parked in Defendant Sanabria's driveway or on public property is immaterial.

The Defendant relies on a misrepresentation of non-controlling authority in order to argue

that the rule of *Ross v. Hartman* does not apply to a vehicle parked on private property.  (Def.'s

Resp. 19-20 (*citing Elliott v. Capitol Cadillac-Oldsmobile Co.*, 245 A.2d 634, 635 (D.C. App.

1968).)  Whether *Ross v. Hartman* applies is not a matter, however, of who happens to hold title

to the property from which the vehicle is stolen, but rather is a matter of how accessible the

vehicle is to the general public, regardless of whether it happens to be parked on public property

or not.  *See, e.g., Boland v. Love*, 95 U.S. App. D.C. 337, 342-43, 222 F.2d 27, 33 (D.C. Cir.

1955) (*citing Schaff v. R.W. Claxton, Inc.*, 79 U.S. App. D.C. 207, 208, 144 F.2d 532, 533 (D.C.

Cir. 1944) (holding that the rule of *Ross v. Hartman* applied, "though the unlocked car was left in

a private parking place," since it was nevertheless "open to the public")).

---

[7] Further discovery on this issue, e.g., deposition of the affiants, deposition of the investigating detective, and interviews of neighbors, may further a resolution of this dispute.

**A.     A claim of negligence may still lie even if the stolen vehicle was parked on private property at the time of the theft, provided the vehicle was still openly accessible to the public.**

In *Schaff v. R.W. Claxton*, the defendant's "driver left the truck, with the keys in it, in the parking space beside a restaurant to which he was delivering goods." *Schaff*, 79 U.S. App. D.C. at 207, 144 F.2d at 532. While he was doing so, "employees of the restaurant drove off in the truck and injured appellants." *Id.* Though adjacent to the public street, the restaurant's parking area was a privately owned space. *See* 79 U.S. App. D.C. at 208, 144 F.2d at 533. Like J&B Trucking Associates, the defendant in *Schaff* argued that *Ross* categorically did not apply because the stolen vehicle had been parked on private property. *See id.* The trial court agreed, and granted a directed verdict for the defendant. *See* 79 U.S. App. D.C. at 207, 144 F.2d at 532. On appeal, however, the D.C. Circuit disagreed, reasoning as follows:

> It is true that the *Ross* case involved the violation of an ordinance against leaving an unlocked car in a 'public place,' and we do not think that a restaurant's private parking space is a 'public space' within the meaning of the ordinance. But we said in the *Ross* case: 'In the absence of an ordinance * * * leaving a car unlocked might not be negligent in some circumstances, although in other circumstances it might be both negligent and a legal or 'proximate' cause of a resulting accident.'

*Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d at 533 (*quoting Ross v. Hartman*, 78 U.S. App. D.C. 217, 218, 139 F.2d 14, 15 (1943)). In other words, since the ordinance requiring motor vehicles to be locked when unattended applies to vehicles parked in publicly owned space (e.g., a public street), a violation of the ordinance in public space is negligence *per se*, but even if the vehicle is parked on private space, leaving it unlocked and unattended with the keys in it can still constitute negligence, albeit not *per se*. The only legal distinction to be drawn between the public or private ownership of the space from where the vehicle is stolen is whether negligence will be a

11

question for the jury or not: if the violation occurs on publicly owned space, then it is negligence *per se*; if on private space, then negligence is a question for the jury.  *See id.*

For this reason, the *Schaff* court reversed and remanded the case for trial "with instructions [for the jury] to find for the plaintiffs if they found that the defendant's driver was negligent in leaving the car unlocked and that this negligence was a proximate cause of the accident."[8]  *Id.*  Thus, as the D.C. Circuit later explained of its holding in *Schaff*, "we ruled it was for the jury to decide whether or not 'the defendant's driver was negligent in leaving the car unlocked and . . . [whether or not ] this negligence was a proximate cause of the accident,'" even "though the unlocked car was left in a private parking place," because the vehicle was nevertheless "open to the public, in close proximity to the street and next to a restaurant [from] where restaurant employees took it."  *Boland*, 95 U.S. App. D.C. at 343, 222 F.2d at 33 (*quoting Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d at 533).

Similarly, in *Casey v. Corson & Gruman Company*, "an unlocked sand and gravel truck was stolen during the night from a construction company's private parking lot," in the District.  *Boland*, 95 U.S. App. D.C. at 343, 222 F.2d at 34 (*citing Casey v. Corson & Gruman Co.*, 95 U.S. App. D.C. 178, 179, 221 F.2d 51, 52 (1955)).  The keys had been left inside the truck.  *See Casey*, 95 U.S. App. D.C. at 179, 221 F.2d at 52.  The thief caused a collision, but it occurred many miles away, south of Petersburg, Virginia, and many hours after the theft.  *See id.*  Despite the private nature of the lot, the defendant was still assumed to be negligent, though "the negligence of the owner of the lot . . . was held as a matter of law not to be a proximate cause of the injuries."  *Colonial Parking, Inc. v. Morley*, 129 U.S. App. D.C. 151, 152, 391 F.2d 989, 990

---

[8] Upon retrial, the jury found for the plaintiff.  *See R.W. Claxton, Inc., v. Schaff*, 83 U.S. App. D.C. 271, 271, 169 F.2d 303, 303 (D.C. Cir. 1948).  The Defendant appealed to the D.C. Circuit again, and in a three-sentence per curiam opinion, the D.C. Circuit affirmed the plaintiff's judgment, because "[t]he judgment now here on appeal was upon a new trial in which the law stated in [the Court's prior] opinion was followed."  *Id.*

(1968) (*citing Casey*, 95 U.S. App. D.C. 178, 221 F.2d 51 (1955)).  The *Casey* court affirmed the trial court's directed verdict for the defendant construction company on grounds that the "negligence thus sought to be charged to defendant under the principles of *Ross v. Hartman* . . . , was too remote from the collision in time, place and circumstances to be a proximate cause of plaintiffs' injuries."  *Casey*, 95 U.S. App. D.C. at 179, 221 F.2d at 52.  The *Casey* court did not question the claim of negligence, however, despite that the truck had been stolen from a private lot.  *See id.*

 In contrast, no cause of action lies where the vehicle, even though left unlocked with the keys inside, is itself locked inside a building or private area secured from the general public. *See, e.g., Howard v. Swagart*, 82 U.S. App. D.C. 147, 151, 161 F.2d 651, 655 (1947) (holding that "leaving a car unlocked in a private parking-lot garage does not constitute negligence").  In *Howard*, the defendant parked his car on a regular basis in a professional garage, the S and H Parking Center.  *See Howard*, 82 U.S. App. D.C. at 148, 161 F.2d at 652.  The car was customarily parked on the fourth or fifth floor of the garage, and the garage was open and staffed on a twenty-four hour basis.  *See* 82 U.S. App. D.C. at 149, 161 F.2d at 653.  Customers did not have free access to the parked cars: customers had to drop off their cars at the entrance, from where a staff person would take it to be parked; to pick up their cars, customers had to wait at the exit while staff retrieved their cars for them.  *See id.*  In sum, the cars were parked inside a guarded building to which the public had no free access.

 A staff member stole a customer's car while it was in the garage, and then loaned it to another staff member, who subsequently struck and injured the plaintiff while negligently operating the car.  *See* 82 U.S. App. D.C. at 149-50, 161 F.2d at 653-54.  The Plaintiff sued the owner of the garage and the owner of the car, based on the holdings of *Ross v. Hartman* and

*Schaff v. R.W. Claxton*. *See* 82 U.S. App. D.C. at 150, 161 F.2d at 654. The trial court entered judgment for the defendants, but the appeal proceeded only against the garage operator. *See id.* The D.C. Circuit affirmed judgment for the defendants based on a lack of proximate causation. *See* 82 U.S. App. D.C. at 151, 161 F.2d at 655. The court held that the subsequent use of the vehicle by a person other than the thief, and over twelve hours after it had been stolen, was too causally remote for any reasonable jury to find that that any negligence on the part of the defendants caused the plaintiff's injuries. *See id.* The Court also went on to clarify that, under these circumstances "a car unlocked in a private parking-lot garage does not constitute negligence." *Id.* The court distinguished its holdings in *Ross* and *Schaff*, concluding that to leave a vehicle in an enclosed garage, not open to the public, and under supervision, is sufficient to protect the public from the risk of injury from car theft, and therefore "is not negligence." 82 U.S. App. D.C. at 152, 161 F.2d at 656.

   *Ross* and its progeny therefore create a spectrum defining the limits of negligence:

| Negligence *Per Se* | Negligence, as a Jury Question | No Negligence, as a Matter of Law |
|---|---|---|
| leaving keys in an unlocked vehicle in a public space, violating an ordinance | leaving keys in an unlocked vehicle in an private space, adjacent to a public street, not enclosed, and readily accessible to the public | leaving keys in an unlocked vehicle in a private, enclosed space (e.g., in a building or behind a fence), *not* readily accessible to the public. |
| *Ross*, 78 U.S. App. D.C. at 218-19, 139 F.2d at 15-16. | *Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d at 533; *Casey*, 95 U.S. App. D.C. at 179, 221 F.2d at 52; *Boland*, 95 U.S. App. D.C. at 343, 222 F.2d at 33. | *Howard*, 82 U.S. App. D.C. at 151, 161 F.2d at 655. |

The unifying factor is the degree of public access to the unlocked vehicle.  If on a public street or property, then public access and the concomitant risk to public safety are at their height, since a private individual cannot limit access to the vehicle other than by locking it.  It is for this reason, as the *Ross* court observed, that the purpose of the ordinance requiring unattended vehicles to be locked is not merely to prevent theft of private property, but to guard against public harm.  *See Ross*, 78 U.S. App. D.C. at 218, 218 139 F.2d at 15.  It is the statute's goal of preventing public harm that makes violating the ordinance negligence *per se* when harm to a member of the public results.  *See id.*

If the vehicle is on unenclosed private space adjacent to a public street, leaving it unattended with the keys in it can still be negligence, because virtually the same degree of risk to the public exists as if it were on the street.  *See Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d at 533.  The courts have not extended negligence *per se* to such a situation, in part because the ordinance is limited to public areas, but also because the operator of the vehicle in private space has power to exclude the public in other ways than solely by locking the vehicle.  *See id.* Nevertheless, if the operator fails to exercise that power by maintaining vigilance over the vehicle while it is unlocked and ready to run, the operator can still be found negligent if a thief then steals the unattended vehicle and harms a member of the public.  *See id.*

Finally, if the vehicle is in enclosed, private space, not readily accessible to the public, then the rationale for finding negligence in leaving the vehicle unlocked is eliminated, because the exclusive enclosure serves the same function as locking the vehicle: it prevents a member of the public from readily using the vehicle without permission.  *See Howard*, 82 U.S. App. D.C. at 151, 161 F.2d at 655.  Liability is excluded *as a matter of law*, however, only where the facts admit but one conclusion: that there was no ready access to the vehicle by the public.  *Compare*

*Howard*, 82 U.S. App. D.C. at 151, 161 F.2d at 655 (holding no negligence as a matter of law where vehicle was kept in garage, under supervision, with no public access), *with Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d at 533 (holding negligence to be question for the jury where the vehicle was on private space, but adjacent to the public street, not enclosed, and readily accessible by the public).[9]

C.    **Even assuming the facts as claimed by the Defendant, the Plaintiffs' claim of negligence will still lie, and the Defendant's Cross-Motion for Summary Judgment must be denied.**

1.    **The Defendant's sole authority is not controlling precedent.**

It is against the case law discussed above that the Defendant's opposition, and its cross-motion for summary judgment, must be measured.  The Defendant, however, relies exclusively on *Elliott v. Capitol Cadillac-Oldsmobile Company*, 245 A.2d 634, 635 (D.C. App. 1968), to support its argument that the rule of *Ross v. Hartman* categorically does not apply if the vehicle in question is parked on private property when it is stolen.  (Def.'s Resp. 19.)  As an initial matter, the decision in *Elliott* is from the pre-1971 local District of Columbia Court of Appeals, and is therefore not controlling precedent.  "Decisions of the circuit court [i.e., the United States Court of Appeals for the District of Columbia Circuit] issued prior to February 1, 1971, the effective date of court reorganization, 'constitute the case law of the District of Columbia,'" i.e., the District's binding precedent, not the decisions of the pre-1971 District of Columbia Court of Appeals.  *Holland v. Baltimore & O. R. Co.*, 431 A.2d 597, 600 (D.C. 1981) (*quoting M.A.P. v. Ryan*, 285 A.2d 310, 312 (1971)).  The controlling District case law on this issue is therefore the

---

[9] Relying on these cases, it was in this sense that the court in *Gaither v. Myers* commented, in dicta in a footnote, that "[f]or liability to lie, the car must be left unattended and not on private property."  *Gaither v. Myers*, 131 U.S. App. D.C. 216, 220 n.14, 404 F.2d 216, 220 n.14 (1968) (*citing, inter alia, Boland v. Love*, 95 U.S. App. D.C. 337, 222 F.2d 27 (1955); *Casey v. Corson & Gruman Co.*, 95 U.S. App. D.C. 178, 221 F.2d 51 (1955); *R.W. Claxton, Inc. v. Schaff*, 83 U.S. App. D.C. 271, 169 F.2d 303 (1948); *Howard v. Swagart*, 82 U.S. App. D.C. 147, 161 F.2d 651 (1947)).

pre-1971 decisions of the D.C. Circuit discussed above: *Ross*, *Schaff*, *Boland*, *Howard*, and

*Casey*. *See, e.g., Elliott*, 245 A.2d at 636 n.1 (Kelly, J., concurring) (citing *Ross* and *Schaff*).  In

any event, the facts of *Elliott* fall within the framework established by the D.C. Circuit

precedent, and are easily distinguishable from the facts of this instant case.

> ### 2. The instant case is distinguishable from *Elliott*, because even in the Defendant's driveway, the truck was still openly accessible to the public.

In *Elliott*, the defendant was a car dealership that also performed mechanical service and

repair.  *See Elliott*, 245 A.2d at 634.  The dealership maintained a lot in which customers left

their cars for servicing.  *See id.*  The dealership's staff "left the keys to the car in the ignition, as

was the custom on the lot."  *Id.*  The dealership staff apparently supervised the lot, however,

because the trial judge found that the cars were not left unattended.  *See Elliott*, 245 A.2d at 634-

35, 636.  Nevertheless, a thief broke in, stole a vehicle, and subsequently struck and injured the

plaintiff.  *See* 245 A.2d at 634.  The plaintiff sued the car dealership based on *Ross v. Hartman*.

*See id.*  The plaintiff "wholly relied" on a violation of the unattended vehicle ordinance "to prove

negligence," i.e., his theory was negligence *per se*.  245 A.2d at 635.  The case was tried to the

bench, and the court entered judgment for the defendant dealership.  *See* 245 A.2d at 634-35.

The trial court based its decision on the private nature of the lot, plus the fact that the vehicles

had not been left unattended.  *See id.*  Because the car had not been left unattended, there was no

violation of the statute and therefore no negligence.  *See id.*

The pre-1971 District of Columbia Court of Appeals affirmed, holding that the regulation

requiring unattended vehicles to be locked does not apply "[w]hen a car is made less accessible

to possible removal by thieves because placed on private property *and* away from immediate

public contact and visibility."  245 A.2d at 635 (emphasis added).  To this extent, the *Elliott*

court's holding is consistent with *Howard v. Swagart*, because, like the car in the garage in

*Howard*, the car in *Elliott* was segregated "from immediate public contact and visibility," and

subject to supervision by the staff of the dealership. *Compare Howard*, 82 U.S. App. D.C. at

152, 161 F.2d at 656, *with Elliott*, 245 A.2d at 635. Indeed, the *Elliott* court couched its decision

in terms of the same policy the *Howard* court had expressed, refusing to extend liability to

vehicles kept in "a closed garage," "away from a public highway," or otherwise isolated from

immediate public access. *Elliott*, 245 A.2d at 635.

   The holding in *Elliott* is also consistent with *Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d

at 533, and *Casey*, 95 U.S. App. D.C. at 179, 221 F.2d at 52, insofar as it affirms that negligence

*per se* cannot be found where the violation of the ordinance occurs in private space. *See Elliott*,

245 A.2d at 635. In this sense, its holding "that Section 98 of the Traffic and Motor Vehicle

Regulations applies only to cars left unattended on public property," is consistent with *Ross* and

*Schaff*, to the extent that the plaintiff's claim "wholly relied" on a violation of that ordinance to

prove negligence, i.e., negligence *per se*. 245 A.2d at 635. As the *Elliott* concurrence cautioned,

however, that holding would *not* be consistent with *Ross* and *Schaff* if it were construed to mean

that simple negligence would *never* lie for a theft that occurred on private property. "[W]ith or

without a regulation, civil liability for damages can rest upon evidence that a thief trespassed

upon private property and helped himself to an unattended vehicle with the use of keys left in the

ignition." *Elliott*, 245 A.2d at 636 (Kelly, J., concurring) (*citing Schaff v. R. W. Claxton, Inc.*, 79

U.S. App. D.C. 207, 144 F.2d 532 (1944); *R. W. Claxton, Inc. v. Schaff*, 83 U.S. App. D.C. 271,

169 F.2d 303 *cert. denied*, 335 U.S. 871 (1948)). As *Schaff* made clear, it is not the public or

private ownership of the parking space that determines whether negligence will lie, but rather, as

the *Elliott* court put it, whether the vehicle is subject to "immediate public contact and visibility."

*See Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d at 533 (*quoting Ross*, 78 U.S. App. D.C. at 218, 139 F.2d at 15); *Elliott*, 245 A.2d at 635.  For this reason, the concurrence in *Elliott* joined in affirming the judgment, "only because the trial judge found that the vehicle in question was not unattended within the meaning of the regulation," and therefore no liability could be found regardless.  *Elliott*, 245 A.2d at 636 (Kelly, J., concurring).

> **3.    The location of the Defendant's truck at the time of the theft is legally immaterial, and the Plaintiff is still entitled to summary judgment regarding liability.**

Consequently, the Defendant is left with no legal or factual basis on which to challenge a finding of negligence.  Defendant Sanabria states in his Affidavit that the truck in question "was stolen from the driveway of my residence located at 5615 Queens Chapel Road," and that "[t]his vehicle was parked within a driveway on private property at the time it was stolen."  (Def. Resp. Ex. A, Sanabria Aff. ¶¶ 5-6.)  His housemate, Ms. Rosa H. Lopez, also attested that the truck was stolen from their private driveway at that address (she also states that the thief struck her car, which was also in the driveway).  (Def. Resp. Ex. B, Lopez Aff. ¶¶ 3-5.)  No where does Defendant Sanabria or Ms. Lopez claim that the truck was locked in a garage, or enclosed by a locked fence, or otherwise isolated from the public street.  Nowhere does Defendant Sanabria claim that anyone else was supervising the truck in his stead.  Defendant J&B Trucking Services has not adduced any other evidence that could show such facts, and, in light of Mr. Sanabria's affidavit and the photographs of his driveway (Ex. 1)[10], there is no way Defendant J&B Trucking could plausibly do so.  Indeed, the driveway in question is adjacent to Queens Chapel Road, gives out directly onto that street, and is visible and immediately accessible to any member of the public who might walk by on the sidewalk that runs in front of the house and across the

---

[10] The Plaintiffs are presenting these photographs as exhibits to their Response in opposition to the Defendant's Cross-Motion for Summary Judgment.

driveway.  (Ex. 1 at 2, 3.)  Defendant Sanabria's house is not isolated: it is surrounded by other houses in a suburban neighborhood, and Queen's Chapel Road is a four-lane thoroughfare.  (Ex. 1 at 2, 3.)

Assuming the facts alleged by the Defendants regarding where the truck was parked at the time it was stolen, this case falls squarely within the holding of *Schaff v. R. W. Claxton, Inc.* As in *Schaff*, the truck in this instant case was left unattended, with the keys in it, in a private parking space (a driveway) next to a public road, and accessible to the public.  Compare *Schaff*, 79 U.S. App. D.C. at 207, 144 F.2d at 532, *with* Def.'s Resp. 20; Exs. A & B; Pls.' Resp. to Def.'s Cross-Mot. for Summ. J. Ex. 1 (attached photos).  The affiants do not assert that their driveway is not open to "immediate public contact and visibility," *Elliott*, 245 A.2d at 635, and, indeed, photographs demonstrate that the driveway is immediately accessible to the general public, without any fence, wall, or other barrier.[11]  As in *Schaff* then, the Plaintiffs' claim of negligence will lie, even "though the unlocked [truck] was left in a private parking place," because the vehicle was nevertheless "open to the public, in close proximity to the street." *Boland*, 95 U.S. App. D.C. at 343, 222 F.2d at 33 (*citing Schaff* , 79 U.S. App. D.C. at 208, 144 F.2d at 533).

Yet unlike *Schaff*, the jury need not decide whether the Defendants in this instant case were negligent or not, because Defendant J&B Trucking Services has already conceded that Defendant Sanabria's actions constituted negligence: "Assuming, *arguendo*, that the facts as alleged by the Plaintiffs are true, Mr. Sanabria was negligent in leaving the subject box truck unattended, with the keys in the ignition and the engine running."  (Def.'s Resp. 17.)  There is no

---

[11] The Defendant argues that the damage to Ms. Lopez's car demonstrates that the "truck was made less accessible to the public" (Def.'s Resp. 21), yet the fact that the thief was able to drive off so quickly, *despite the presence of Ms. Lopez's vehicle*, only serves to demonstrate how accessible the truck was to the public, and how accessible Queens Chapel Road was to the truck, once the thief was in control of it. It should be noted that neither affiant stated that Ms. Lopez's car was *blocking in* the truck.

need to assume any of these facts, *arguendo*, however.  The Defendant has already conceded that, "[a]t the time preceding the theft, Mr. Sanabria had left the keys to the subject truck in the ignition."  (Def.'s Resp. 7, ¶ 4.)  The Plaintiffs have adduced unchallenged facts showing that Mr. Sanabria then left the truck unattended, with the engine running.  (Pls.' Mot. Ex. I (*United States v. Cifuentes*, CR-F155-06, D.C. Super. Ct., Prelim. Hr'g Tr. 5:1-5, Feb. 2, 2006 (Testimony of Detective Elgin Wheeler)).)  The Defendant has conceded further that Mr. Cifuentes-Lopez then stole the truck.  (Def.'s Resp. 7, ¶ 5-6.)  There is therefore no dispute as to negligence.  Whether or not the truck was parked in Defendant Sanabria's driveway or in public space is immaterial, since the claim of negligence will lie, either way.  For these and the further reasons stated above in Section I, there are no material facts in genuine dispute regarding liability and proximate causation.  Judgment on these issues should therefore be entered for the Plaintiffs.

> **4.      The Defendant's Cross-Motion for Summary Judgment based on District law should be denied, because there are no facts showing the truck in question was secured from the general public.**

At the very least, the Defendant's cross-motion for summary judgment based on the law of the District of Columbia should be denied.  The Defendant's sole basis for claiming no liability under District law is its claim that the truck was stolen from private, rather than public property.  As discussed above, the Defendant relies mistakenly on *Elliott*, 245 A.2d at 635, as controlling authority.  The controlling authority for the Defendant's claim is *Howard v. Swagart*, 82 U.S. App. D.C. at 151, 161 F.2d at 655.  Yet, even assuming all of the facts the Defendant alleges, he has failed to show any of the factors for which the *Howard* court held no liability as a matter of law, i.e., he has failed to show that the truck in question was stored in a garage or any other secure enclosure protecting it from general public access, or that it was guarded or supervised in any way while Defendant Sanabria left it unattended.  *See id.*

The Defendant fails to meet even the standard in *Elliott*, for there the court held that, for no liability to apply, the vehicle had to be not only "on private property," but also "away from immediate public contact and visibility." *Elliott*, 245 A.2d at 635.  In order for *Elliott*'s holding to be consistent, not only with itself, but also with the precedents in *Ross*, *Schaff*, and *Howard*, the *Elliott* court's use of the term "private" property must be construed narrowly to mean "secluded from the public," not just privately *owned*.  Thus construed, the Defendant fails to meet the standard even of its own cited authority.  (Def.'s Resp. 20.)  As explained above, the most that the Defendant can plausibly claim, based on the truck being parked in Defendant Sanabria's driveway, is no negligence *per se*.  Negligence would still be a question for the jury (if there were still any genuine dispute as to negligence).  *See Schaff*, 79 U.S. App. D.C. at 208, 144 F.2d at 533.  The Defendant's argument on this point is nothing but one more in a series of legal red herrings with which it has sought to mislead the Court.  For these reasons, the Defendant's Cross-Motion for Summary Judgment based on the law of the District of Columbia should be denied.

**D.   The Defendant's Cross-Motion for Summary Judgment based on Maryland law should be denied because, under the District's choice-of-law jurisprudence, Maryland law does not apply.**

Finally, the Defendant's cross-motion for summary judgment based on the law of the Maryland should also be denied.  The Defendant argues that under Maryland law the Plaintiffs would have no cause of action.  (Def.'s Resp. at 14 (*citing Liberto v. Holfeldt*, 211 Md. 62, 66 (1959).)  The Defendant's argument, however, rests on its mistaken belief that Maryland law applies to this instant case under the District's choice-of-law jurisprudence.

In order to assert that Maryland law applies in this case, the Defendant resorts to a flat misrepresentation of the District's choice-of-law jurisprudence.  The Defendant asserts that "the

courts within the District of Columbia have been consistent in holding that it is the location of

the negligence or statutory violation giving rise to liability which is the determinative factor in

determining which jurisdiction's substantive law applies, regardless of where the injury occurs."

(Def.'s Resp. 10.)  To the contrary, the District of Columbia applies a governmental interest test

to determine which jurisdiction's law applies, and in that test, the location of the negligent

conduct is but one of four factors considered, among which is also the location of the injury.  *See*

*Drs. Groover, Christie & Merritt, P.C. v. Burke*, 917 A.2d 1110, 1117 (D.C. 2007) (*citing*

*District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995) (holding that the court

considers (a) where the injury occurred; (b) where the alleged negligence occurred; (c) residence

of the parties; and (d) where the relationship among the parties is centered)).  Moreover, the

Defendant's thesis flatly contradicts *Kaiser-Georgetown Community Health Plan, Inc. v.*

*Stutsman*, 491 A.2d 502, 510-11 (D.C. 1985), in which the D.C. Court of Appeals held that

District law applied even though *all* of the negligence occurred in Virginia.  *See also Biscoe v.*

*Arlington County*, 238 U.S. App. D.C. 206, 214, 738 F.2d 1352, 1360 (D.C. Cir. 1984) (applying

District choice of law in a diversity case, and holding that District law applied even though

negligence occurred in Virginia).  The Defendant's assertion that location of injury is irrelevant

also contradicts the holding that the District's "compensatory policy has the greatest relevance to

cases when the mishap occurs in the District and when District residents are plaintiffs."  *Gaither*

*v. Myers*, 131 U.S. App. D.C. 216, 223, 404 F.2d 216, 223 (1968).  None of the authorities cited

by the Defendant holds that "the location of the negligence . . . is the determinative factor"

(Resp. 10); all apply the four-factor governmental interest analysis.  *See, e.g., Zhou v. Jennifer*

*Mall Restaurant*, 534 A.2d 1268, 1270 (D.C. 1987) [12]; *District of Columbia v. Coleman*, 667

---

[12] The Defendant misconstrues *Zhou* as holding that liability under District law will lie *only* for a statutory
violation that occurs in the District.  The actual holding, in context, states no such restriction.  *Zhou*

A.2d 811, 816 (D.C. 1995).  The Defendant's disregard for contrary precedent and its misrepresentation of the case law speaks for itself.

Finally, despite this being the second time the Defendant has presented this argument, nowhere does it address the fact that under Maryland's *lex loci delicti*, Maryland rejects any interest in the application of its law to this instant case.  *See Laboratory Corp. of America v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006) (holding that the law of the jurisdiction where the injury occurred is the law to be applied).  Therefore, even in a Maryland court, District law would apply.  By contrast, under a governmental interests analysis, the District has the superior, if not the *only* interest in this case, because the Plaintiffs live in the District, they were injured in the District, Plaintiff Keith Bailey was treated for his injuries in the District, the negligence occurred in the District metropolitan area, and arose in the course of business that the Defendants directed, at least in part, at the District.  The Plaintiffs incorporate by reference their argument on this point contained in their Opposition to the Defendant's separate Motion for application of Maryland law.  For these reasons, and the reasons contained in that Opposition, Maryland law does not apply to this case, and therefore the Defendant's cross-motion for summary judgment based on the substantive law of Maryland should be denied.

## III.    Conclusion

Because there now remain no material issues in genuine dispute regarding the Defendants' negligence and its proximate causation of the Plaintiffs' injuries, the Court should grant the Plaintiffs' Motion for summary judgment on those issues.

---

merely held that *if* a defendant violates a District statute while in the District, but thereby causes harm in another jurisdiction, District law may still apply. *See Zhou*, 534 A.2d at 1271.

Respectfully submitted,


**KARP, FROSH, LAPIDUS, WIGODSKY**
  **& NORWIND, P.A.**


/s/Edward L. Norwind
Steven VanGrack, Esq., D.C. Bar No. 223-339
Edward L. Norwind, Esq., D.C. Bar No. 936-393
Murray D. Scheel, Esq. D.C. Bar No. 490-012
2273 Research Boulevard, Suite 200
Rockville, Maryland 20850
Telephone: (301) 948-3800
Facsimile: (301) 948-5449

*Attorneys for Plaintiffs*





